Lisa Gaye MULBERRY, Respondent,

v.

Angela D. BAKER, Appellant.

No. WD 50025.

Missouri Court of Appeals,
Western District.

April 4, 1995.

Paul Paxton Hasty, Jr., Kansas City, for appellant.

Michael P. Healy, Kansas City, for respondent.

Before FENNER, C.J., and BERREY and ULRICH, JJ.

FENNER, Chief Judge.

The appellant, Angela D. Baker Cobbins ("Cobbins"), was involved in an automobile collision with the respondent, Lisa Gaye Mulberry ("Mulberry"), on June 3, 1993. On September 21, 1993, Mulberry filed an action against Cobbins in the Jackson County Circuit Court, requesting damages for injuries she sustained as a result of the accident.

1. Dr. Filberth, a practicing chiropractor since 1979, had also been treating Mulberry for back

On June 21, 1994, Mulberry supplemented her interrogatory answers to identify Dr. James Filberth, D.C., as an expert "expected to testify about the nature, cause and extent of Mulberry's injuries, and all other medical issues raised in her Petition." Dr. Filberth treated Mulberry for the neck and back injuries she received in the accident.[1] Cobbins wrote a letter dated July 8, 1994, to the Records Custodian at Dr. Filberth's office, requesting Mulberry's complete records. The letter stated that because the trial was scheduled to commence on July 25, 1994, Cobbins needed a prompt response to the request. In response to the request, Dr. Filberth's office manager sent Cobbins a copy of 134 pages of Mulberry's file. The records sent by Dr. Filberth's office contained only the records regarding Mulberry's treatment after the June 6th accident. The records regarding Mulberry's treatment prior to the accident were omitted. When Cobbins realized the records pertaining to Mulberry's treatment prior to the accident were missing, she served Dr. Filberth with a *subpoena duces tecum* commanding him to appear for deposition and to produce Mulberry's entire record. Pursuant to the subpoena, Dr. Filberth appeared for deposition and produced Mulberry's entire record on July 21, 1994. On July 27, 1994, Mulberry filed a Motion for Allocation of Expert Expenses to Defendant, requesting the court to require Cobbins to pay Dr. Filberth $500.00 in expert witness fees for his appearance at the July 21 deposition. On August 30, 1994, the circuit court entered an order sustaining that motion. On October 13, 1994, prior to commencement of trial, the underlying case was dismissed with prejudice pursuant to the stipulation of the parties. Cobbins now appeals the August 30 order requiring her to pay Dr. Filberth's expert fees.

Cobbins contends that the trial court erred in requiring her to pay Dr. Filberth a fee for his deposition testimony under Rule 56.01(b)(4) because Dr. Filberth is not an "expert" as that term is contemplated in the rule. Rule 56.01(b)(4) states:

problems for two months prior to the accident.

626

4. *Trial Preparation: Experts.* Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of Rule 56.01(b)(1) and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

> b. A party may discover by deposition the facts and opinions to which the expert is expected to testify. Unless manifest injustice would result, the court shall require the party seeking discovery from an expert pay the expert a reasonable hourly fee for the time such expert is deposed.

Cobbins contends that since Dr. Filberth was Mulberry's treating physician, he cannot be an expert witness under the rule because he was not consulted in anticipation of litigation or trial. As Cobbins points out, Missouri courts have held that a treating physician is not an expert for purposes of the disclosure requirements under Rules 56.01(b)(4)(a) and 56.01(e)(1)(B). *See Owen v. City of Springfield,* 741 S.W.2d 16, 20 (Mo. banc 1987) (since the witnesses had personal knowledge of the events and were not engaged by a party in anticipation of litigation, they were not experts and, therefore, their identity did not have to be disclosed prior to trial), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2036, 100 L.Ed.2d 620 (1988); *Stone v. Duffy Distribs., Inc.,* 785 S.W.2d 671, 675 (Mo.App.1990) (the disclosure requirements under Rule 56.01(e)(1)(B) did not apply because the doctor was not engaged in anticipation of litigation and was a participant in the diagnosis and treatment of the plaintiff); *Delaporte v. Robey Bldg. Supply, Inc.,* 812 S.W.2d 526, 535 (Mo.App.1991). Furthermore, even if "some of [the witnesses'] testimony incidentally called upon their learning and experience for conclusions and opinions, and could in that sense be called 'expert testimony,' that does not make them 'expert witnesses' within the meaning of Rule 56.01(b)(4)." *Stone,* 785 S.W.2d at 675–76 (quoting *Owen,* 741 S.W.2d at 20).

■ However, in *Brandt v. Medical Defense Assocs.,* 856 S.W.2d 667, 673 (Mo. banc 1993), the Missouri Supreme Court stated:

> The treating physician is first and foremost a fact witness, as opposed to an expert witness. In personal injury litigation, the treating physician is likely to be the principal fact witness on the issue of damages; in a medical malpractice case, the treating physician will often also be an important fact witness on liability. Because the treating physician uses medical training and skill both in diagnosing and treating the patient and in describing to the jury the plaintiff's condition and treatment, it is often assumed that the treating physician is automatically an expert witness. Actually, *the treating physician only functions as an expert witness to the extent that one or both of the parties ask the witness to use the basic facts to draw conclusions and express opinions on relevant medical issues.* (Emphasis added.)

Thus, a treating physician is not necessarily precluded from also being an expert witness for the purpose of establishing plaintiff's case: he may be considered an expert witness in support of a plaintiff's claim to the extent his testimony reflects medical opinions and conclusions.

■ With this in mind, we point out that the trial court is vested with wide discretion in the administration of the rules of discovery and this court will only disturb an unjust exercise of discretion. *VBM Corp. v. Marvel Enters., Inc.,* 842 S.W.2d 176, 179 (Mo.App. 1992). Furthermore, this broad discretion is applicable where the trial court is preliminarily deciding whether a witness qualifies as an expert. *State ex rel. Missouri Highway & Transp. Comm'n v. Meramec Valley Elevator, Inc.,* 782 S.W.2d 642, 644 (Mo.App.1989).

■ In the case at bar, Mulberry listed Dr. Filberth as an expert she intended to call at trial. She specifically stated he was "expected to testify about the nature, cause and extent of Mulberry's injuries, and all other medical issues raised in her Petition." At the deposition, Dr. Filberth testified on issues which would be considered more in the nature of expert testimony, as opposed to purely factual testimony. For instance, he testified "I felt she was at a point of maximum medical improvement, and further care was not going to improve her condition anymore." He also testified as to his qualifications, biases and opinions regarding medical

issues. It was within the trial court's broad discretion to find Dr. Filberth's testimony was in the nature of expert testimony[2] and since Cobbins subpoenaed Dr. Filberth to testify at the deposition, it was within the court's discretion to sustain Mulberry's motion and order Cobbins to pay the fee.[3]

 Cobbins also contends that requiring her to pay Dr. Filberth's fee is manifestly unjust.[4] She argues that Dr. Filberth's conduct in failing to initially provide Cobbins with Mulberry's entire record was the cause of Cobbins' having to depose him and should prohibit him from collecting his fee. She further supports this point by citing § 191.227, RSMo 1994, and claiming Dr. Filberth violated this statute and thus forfeits any fee for the deposition.[5] We disagree.

Assuming, *arguendo*, that Dr. Filberth did violate § 191.227, Cobbins cites no authority for the proposition that non-compliance with the statute results in forfeiture of a fee for deposition. She merely reiterates her position that it is unjust to "reward" Dr. Filberth for submitting only the post-accident records. On that point, we find no manifest injustice resulted from the court's order. Dr. Filberth testified that he initially produced only the post-accident records because he believed that was what was required. After realizing the pre-accident records were missing, Cobbins did not request them from either Mulberry or Dr. Filberth: she chose instead to subpoena him for deposition. Furthermore, upon being subpoenaed for the deposition, Dr. Filberth notified Cobbins he would charge $500.00 for the deposition. Finally, a large part of the deposition was devoted to Dr. Filberth's qualifications and biases rather than to the missing records which he produced at the deposition. Again, the trial court had wide discretion in ordering Cobbins to pay the fees. In light of the circumstances, we cannot say it abused that discretion.

The judgment is affirmed.

All Concur.

---

2. The trial court did not issue Findings of Fact and Conclusions of Law. When the trial court makes no specific findings of fact, the appellate court deems all factual issues to be found in accordance with the result reached. *Blanchard v. Director of Revenue*, 844 S.W.2d 589, 590 (Mo. App.1993).

3. The reasonableness of Dr. Filberth's fee was not raised by either party.

4. Rule 56.01(b)(4)(b) provides that the party seeking discovery from the expert shall pay the expert's fee *unless manifest injustice would result.*

5. Section 191.227 states, in relevant part:

1. All physicians, chiropractors, hospitals, dentists, and other duly licensed practitioners in this state, herein called "providers", shall, upon written request of a patient, or guardian or legally authorized representative of a patient, furnish a copy of his record of that *patient's health history and treatment rendered* to the person submitting a written request, except that such right shall be limited to access consistent with the patient's condition and sound therapeutic treatment as determined by the provider.