STATE ex rel. Jennifer L. (Welch) TRACY, Relator,

v.

The Honorable Joseph P. DANDU-RAND, Judge, Circuit Court of Cass County, Missouri, Respondent.

No. SC 82316.

Supreme Court of Missouri, En Banc.

Nov. 14, 2000.

Steve Garner, Neil Chanter, Springfield, for Relator.

David W. Hauber, Christopher J. Eaton, Donald P. Herron, Kansas City, for Respondent.

WOLFF, Judge.

Does a party continue to have an attorney-client privilege as to documents that the party has provided to its retained expert witness who is designated to testify? While trial courts frequently confront the subject of discovery as to retained experts, the question presented here appears to be one of first impression in this Court.

The expert witness in this case had reviewed the documents and gave them to opposing counsel at the witness' deposition, but the trial court entered an order prohibiting use of the documents. Because Rule 56.01(b)(4) allows discovery by deposition of facts known and opinions held by retained experts, and because the party claiming the privilege has waived it by providing the documents to its retained expert, a writ of prohibition is warranted.

**Background**

This writ proceeding results from the second lawsuit arising from a collision between cars driven by Jennifer (Welch) Tracy and Gary Noland. Noland died as a result of the collision. In the first case the Noland survivors filed a wrongful death action against Tracy and other defendants.[1] The Nolands' attorney asserted, while that case was pending, that Farmers was acting in bad faith in not settling the Nolands' claim against Tracy within the limits of the policy. On the first day of trial, the wrongful death claim against Tra-

---

1. The other defendants were Bruce Baily (defendant ad litem for an "Unknown Phantom Vehicle"), American Family Insurance Company, and Farmers Insurance Company, Inc. The Nolands had two motor vehicle insurance policies through American Family. The claim against Farmers and American Family was for uninsured or underinsured motorist coverage claimed to be operative because a phan-

tom vehicle, whose owner and driver were unknown, was alleged to be involved in causing the collision. The cars Tracy and Noland were driving were insured by Farmers. The Farmers policy on the car Tracy was driving was issued to Lee Bucklew, Tracy's stepfather, and the Farmers policy on the car Noland was driving was issued to Catherine and Jeffrey Frederick.

cy was settled for $1,000,000, an amount considerably in excess of the $50,000 liability limits available to Tracy.

Tracy then brought suit against Farmers for bad faith for allegedly exposing her to liability in excess of the policy coverage. In this second suit, Tracy's counsel requested production of Farmers' entire claim file.

Farmers produced the claim file, but withheld 51 documents, listed on a privilege log that it provided to Tracy. By providing a privilege log to Tracy, in response to Tracy's request for production of documents under Rule 58.01, Farmers complied with the procedure for making a proper objection, on privilege grounds, to requests for documents. Rule 58.01(b). Farmers later disclosed several of the privilege-log documents to Tracy, who is said to have waived her attorney-client privilege as to those documents that were involved in the first lawsuit, where counsel retained by Farmers represented Tracy.

In the bad faith case, Farmers designated Professor Jeffrey Thomas as an expert witness and provided him with factual materials that included some of the documents that were listed on the privilege log. Thomas produced his file to Tracy's counsel, as required by a notice *duces tecum,* when Tracy's counsel took his deposition as part of the discovery allowed as to experts under Rule 56.01(b)(4)(b).[2] Thomas was not questioned at his deposition about the documents in issue, which included a confidential attorney's report of

July 29, 1994, written by Farmers' attorney, Lance LeFevre, and a letter of October 20, 1993, from LeFevre to a Farmers' claims manager. Farmers asserts that the privileged documents were inadvertently sent to Professor Thomas. Thomas testified that he had reviewed his entire file.

The Thomas deposition was in June 1999. About a month later, Tracy's counsel took the deposition of Lance LeFevre and asked him about the documents that LeFevre wrote, specifically the confidential attorney's report of July 29, 1994, and the letter of October 20, 1993. LeFevre refused to answer any questions regarding the documents, claiming they were protected by the attorney-client privilege. A few days later, Farmers' counsel took the videotaped deposition of Professor Thomas, the expert witness, for use at trial because Thomas was moving out of the country. Tracy's counsel cross-examined Thomas about the two documents. Shortly thereafter, Farmers filed a motion for protective order and/or motion in limine asking the court to order Tracy to return the documents to Farmers and that the court enter an order preventing use of the documents or reference to the documents at trial.

The trial court denied Farmers' motion for protective order on August 23, 1999, allowing Tracy to keep the documents, but took Farmers' motion in limine under advisement. Tracy thereafter filed a motion to compel Lance LeFevre to answer deposition questions relating to the documents.

**2.** Rule 56.01(b)(4) provides:
*Trial Preparation: Experts.* Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of Rule 56.01(b)(1) and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:
A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial by providing such expert's name, address, occupation, place of employment and qualifications to give an opinion, or if such information is available on the expert's curriculum vitae, such curriculum vitae may be attached to the interrogatory answers as a full response to such interrogatory, and to state the general nature of the subject matter on which the expert is expected to testify, and the expert's hourly deposition fee.
A party may discover by deposition the facts and opinions to which the expert is expected to testify. Unless manifest injustice would result, the court shall require that the party seeking discovery from an expert pay the expert a reasonable hourly fee for the time such expert is deposed.

The respondent trial judge sustained Farmers' motion in limine to exclude use of the documents and, thereafter, entered an order denying Tracy's motion to compel attorney LeFevre to answer deposition questions relating to the two documents. The trial judge also prohibited Tracy from questioning any witnesses about the documents.

This Court issued its preliminary writ of prohibition February 22, 2000, commanding respondent trial judge to show cause why a writ of prohibition should not issue and to take no action until further order of the Court.

## Discovery of Facts Known by a Designated Expert

■ An expert retained for litigation, such as Professor Thomas, usually knows nothing about the facts of the controversy until contacted by the attorney. Rule 56.01(b)(4) provides for discovery of "facts known and opinions held" by such experts once they have been designated as trial witnesses. The discovery of facts known and opinions held by an expert are, until the expert is designated for trial, the work product of the attorney retaining the expert. *See* Rule 56.01(b)(3).[3] Once the retaining attorney decides to use the expert at trial and discloses him or her as a witness, the expert is subject to discovery. Rule 56.01(b)(4).

Tracy claims that matters revealed in the documents contradict Thomas' opinion testimony and constitute admissions against interest on the part of Farmers. Farmers denies that the documents have such effect. For purposes of resolving this discovery matter, we need not decide this dispute over the effect of the documents.

■ Expert witnesses retained for litigation are unique. A lay witness may use a document that is either the attorney's work product or the subject of an attorney-client communication to refresh his recollection *before* testifying, and we have protected such a document from discovery. *See State ex rel. Polytech, Inc. v. Voorhees*, 895 S.W.2d 13, 14 (Mo. banc 1995). This protection would not extend to documents that a witness uses *while* testifying. *Id.* at 15.

But a retained expert witness, Professor Thomas in this case, has no memory of the events to refresh. The documents, materials, and other information provided to him are the sources of the facts that he knows.[4]

Rule 56.01(b)(4) sets forth the information that is to be provided by interrogatory

**3.** Rule 56.01(b)(3) provides:

> *Trial Preparation: Materials.* Subject to the provisions of Rule 56.01(b)(4), a party may obtain discovery of documents and tangible things otherwise discoverable under Rule 56.01(b)(1) and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative, including an attorney, consultant, surety, indemnitor, insurer, or agent, only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and that the adverse party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

> A party may obtain without the required showing a statement concerning the action or its subject matter previously made by that party. For purposes of this paragraph, a statement previously made is: (a) a written statement signed or otherwise adopted or approved by the person making it, or (b) a stenographic, mechanical, electrical, audio, video, motion picture or other recording, or a transcription thereof, of the party or of a statement made by the party and contemporaneously recorded.

**4.** Rule 56.01(b)(5) deals with "non-retained experts," which may include actors in the controversy who happen to be qualified to render expert opinions. Discovery as to such witnesses is the same as for lay witnesses, since they may have direct knowledge of, or involvement in, the events in controversy. That is not the case with a retained expert, such as Professor Thomas, whose only sources of information are the attorney and party who retained him.

answer regarding the expert and specifically provides: "A party may discover by deposition the facts and opinions to which the expert is expected to testify." The deposition, with no specific limitations, allows for opposing counsel to probe the expert on the expert's qualifications, knowledge of the subject, information the expert has been provided, the expert's opinions, and all other matters bearing on the expert's opinions and the bases for the opinions. The federal rules regarding experts, by comparison, start with a mandatory disclosure as to the expert, including a written report in which the expert sets forth specifically "the data or other information *considered* by the witness in forming the opinions...." (Emphasis added.) Rule 26(a)(2)(B), F.R.C.P. Under the federal rule, a party waives its work product privilege as to materials viewed by an expert before formulating the expert's opinion, even if the material ultimately was not useful. *Karn v. Ingersoll–Rand,* 168 F.R.D. 633 (N.D.Ind.1996).

Missouri cases require an expert to produce at deposition the materials that the expert has reviewed in order that the opposing attorney be able to "intelligently cross-examine the expert concerning what facts he used to formulate his opinion." *State ex rel. Seitrich v. Franklin,* 761 S.W.2d 756, 758 (Mo.App.1988). The method used in *State ex rel. Seitrich v. Franklin* was the subpoena *duces tecum.* In the present case, Tracy's counsel used a "notice *duces tecum.*" Farmers does not challenge the efficacy of a notice *duces tecum.*

■ It may be suggested that materials given to an expert can be withheld from disclosure if the expert did not rely upon them. There is no such exception in the rule or Missouri precedents. *State ex rel. Missouri Highway and Transp. Comm'n v. Anderson,* 759 S.W.2d 102 (Mo.App. 1988). Rule 56.01(b)(4) should be read to require production of all of the materials provided to the expert. To hold otherwise would allow the expert witness or the par-

ty retaining the expert witness to select which documents to produce after the expert has reviewed the documents in preparation for the expert's testimony. *Id.* at 106. It is appropriate, at deposition or trial, to cross-examine an expert witness as to information provided to the expert that may contradict or weaken the bases for his or her opinion regardless of whether the expert relied upon or considered the information. Removing the privilege from the documents provided to the expert does not necessarily make the documents admissible at trial. As with other non-privileged documents, the law of evidence applies. In this case we deal with discovery, which Rule 56.01(b)(1) says merely requires that non-privileged material be "relevant to the subject matter involved in the pending action." Rule 56.01(b)(1) further states: "It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

■ We do not mean to suggest that a trial court in other contexts lacks discretion to order the return of inadvertently-disclosed attorney-client communications. Missouri does provide strong protection for attorney-client communications. *State ex rel. Great American Ins. Co. v. Smith,* 574 S.W.2d 379 (Mo. banc 1978). In *Gray v. Bicknell,* 86 F.3d 1472 (8th Cir.1996), the federal court, inferring Missouri law, used a balancing test to measure the trial judge's discretion to order return of privileged documents inadvertently disclosed. But unlike *Gray v. Bicknell,* we are dealing in this case with an expert witness. Even though the disclosure of the documents was alleged to be inadvertent, we believe the privilege has indeed been waived. The information was disclosed to an expert, who was, after all, a third party. *See, e .g., State v. Longo,* 789 S.W.2d 812 (Mo.App.1990). The expert witness is wholly in the control of the party who retained him or her. If the party's attorney, in preparing the expert for deposition, finds that privileged documents have been

mistakenly provided to the expert, the attorney presumably has the option of withdrawing the expert's designation prior to deposition. The attorney can claim work-product protection as to that retained expert, since the expert will not be called for trial.

But here the expert has been provided the materials, was designated to testify, has had his deposition taken, and has provided opposing counsel with the documents that Farmers gave to him. It is simply too late to withdraw his designation in order to make the documents secret again. Once the expert's testimony is taken, the deposition is available for use by any party, subject to Rule 57.07.[5] The bell has been rung and cannot be unrung.

## Conclusion

All material given to a testifying expert must, if requested, be disclosed. This indeed is a "bright line" rule,[6] as our Rule 56.01(b)(4) requires. It is clear, understandable, and does not require the application of a multi-prong test.

The writ of prohibition, as modified, is made absolute. As modified, the writ shall prohibit the respondent trial judge from enforcing his order restricting use of documents obtained from Professor Thomas and his order denying the motion to compel deposition answers of witness LeFevre.

---

[5] As noted, Professor Thomas' trial testimony also has already been taken in a deposition. Our Rule 57 does not distinguish between a deposition for discovery and a deposition for trial. Although Farmers has decided not to use this deposition testimony at trial, the deposition testimony is available for use by any party under Rule 57.07(a), which provides in pertinent part:

**Use of Depositions.** Any part of a deposition that is admissible under the rules of evidence applied as though the deponent were testifying in court may be used against any party who was present or represented at the taking of the deposition or who had proper notice thereof. Depositions may be used in court:

to impeach the deponent and

for any purpose if the deponent is not in court or if the deponent is an adverse party....

[6] The "bright line" rule appears in federal trial court decisions. *See, e.g., Lamonds v. General Motors Corp.*, 180 F.R.D. 302 (D.Va. 1998); *Musselman v. Phillips*, 176 F.R.D. 194 (D.Md.1997); *B.C.F. Oil Refining v. Consol. Edison Co. of N.Y.*, 171 F.R.D. 57 (D.N.Y. 1997); *Karn v. Ingersoll–Rand, supra*, 168 F.R.D. 633 (D.Ind.1996); *Baxter Diagnostics, Inc. v. AVL Scientific Corp.*, No. CV 91–4178–RG, 1993 WL 360674 (D.Cal. Aug.6, 1993).