Susan ADAMS, Plaintiff–Appellant,

v.

David SQUIBB, Crabtree Harmon Corp., and Sandra K. Perry, Defendants–Respondents.

No. 25565.

Missouri Court of Appeals, Southern District, Division One.

Jan. 29, 2004.

Petition for Rehearing and Transfer Denied Feb. 20, 2004.

Application for Transfer Denied March 30, 2004.

---

Thomas G. Morrissey, Morrissey Law Firm, P.C., Springfield, MO, for Appellant.

Ron Mitchell, Phillip D. Greathouse, Blanchard, Robertson, Mitchell & Carter, P.C., Joplin, MO, for Respondents David Squibb and Crabtree Harmon Corporation.

Laurel Stevenson, Franke, Schultz & Mullen, P.C., Springfield, MO, for Respondent Sandra Perry.

JAMES K. PREWITT, Judge.

Susan Adams ("Appellant") appeals from an adverse judgment in a personal injury action stemming from a motor vehicle collision. With two points relied on, Appellant contends that the trial court committed plain error in denying her motion for new trial based on allegedly im-

proper statements made during closing arguments, and that the trial court erred in overruling her motion for allocation for expert expenses because the defendants are required to pay for such expenses.

## Facts

On May 17, 1996, Appellant was a passenger in a vehicle driven by Sandra Perry in the left northbound lane of Highway 65 near the off ramp for Highway 60 West in Springfield, Missouri. As Perry slowed or stopped her vehicle in the lane of traffic, David Squibb, driving a bus as an employee for Crabtree Harmon Corporation ("Crabtree"), was unable to stop and struck the rear of a vehicle stopped ahead of him. That vehicle then struck the rear of Perry's vehicle.

Appellant filed suit against Perry, Squibb, and Crabtree, claiming negligence that caused Appellant's personal injuries, specifically, a cervical strain and contusion of the left foot. According to Appellant, a non-steroid anti-inflammatory drug, Relafen, that she was prescribed for the injury to her foot "resulted in membranous glomerulopathy and advanced diffuse interstitial fibrosis of the kidney[,]" for which she requires dialysis and eventual kidney transplant. She sought damages for the injuries and subsequent kidney-related problems, including past and future medial expenses, loss of earning capacity, and shortened life expectancy.

The case proceeded to trial and the jury rendered a verdict in favor of defendants Perry, Squibb, and Crabtree. The trial court entered its final judgment accepting the jury's verdict on December 6, 2002. Appellant filed a motion for new trial on January 6, 2003, and a motion for allocation of expert expenses to defendants on March 24, 2003. Both motions were overruled and this appeal followed. Additional facts necessary to the analysis of Appellant's points are detailed below.

## Discussion

### Point I: Improper Closing Arguments

■ In her first point, Appellant argues that the trial court plainly erred by denying her motion for new trial based on allegedly improper statements made during closing arguments. Appellant did not object to the remarks during trial, but did raise the issue in her motion for new trial.

The collision occurred on May 17, 1996, and Appellant first sought medical attention for her injuries on June 15, 1996, through an emergency room visit. According to Appellant, she waited to seek treatment because she wanted to give the injuries an opportunity to heal, and she wondered if she "was giving it enough time." During the remainder of 1996 and throughout 1997, Appellant continued to be treated, primarily for the injury to her left foot.

In January 1998, Appellant was advised to discontinue taking the Relafen she had been prescribed since August 1996, based on evidence of kidney "insufficiency" and a deterioration of kidney function. She was referred to a nephrologist, Dr. Gary Kell, who also suspected that Appellant's kidney disease was related to the Relafen.

Prior to filing the lawsuit, counsel for Appellant sent a letter to Dr. Kell asking him to explain the cause of Appellant's renal failure. Dr. Kell indicated that, "from a reasonable point of view[,]" Appellant's kidney disease was caused by the Relafen. However, he noted, "It can be said that it [the kidney disease] is in no way related directly to the motor vehicle accident itself." At trial, Dr. Kell testified that his response did not rule out his belief that the Appellant's kidney problems were indirectly related to the collision.

During Appellant's closing argument, her counsel reiterated the evidence of damages presented during the trial, including $353,000 for past medical expenses; a range of $1,500,000 to $2,100,000 for future medical expenses; $76,922 for past loss of earning capacity; and a range of $1,000,000 to $2,000,000 for non-economic damages.

During his closing argument, counsel for Squibb and Crabtree made the following comments:

Well, again, ladies and gentlemen, [Appellant's] wanting to have it both ways. She's wanting to say, gee, we had to give it time, meaning that it wasn't that serious of an injury, but now she wants 3 to $5 million. Does that sound like something this system ought to do, or does that sound something like a lottery system?

Later, also during closing arguments, Squibb and Crabtree's counsel stated the following:

They started from the beginning wanting to get a case here so they could come and hopefully get a lot of money, and they wrote the letter. And in response to that letter, asking was it [the kidney disease] caused by the accident, Dr. Kell answered it as clearly as you could possibly ever ask. ["]It can be said that it is in no way related directly to the motor vehicle accident itself.["]

There's that "directly" word. Directly or contributed to the cause, "directly" is in both of those, and this letter right here keeps them from winning the lottery.

Appellant's counsel did not object to any of the statements. Counsel did, however, respond to the statements during the rebuttal portion of closing argument.

Let's not win the lottery. I'll submit to you [Appellant] didn't win the lottery

in this case. Not one bit. I promise you this. If we could have a verdict where it says that, yes, David Squibb and Crabtree Harmon Corporation caused this wreck, caused this injury, and we could go back in time and give her her kidneys back, that's what she would do. That's exactly what she would do in this case.

But instead she has to come here, she has to exercise her constitutional right to have you decide in this case, and she has to be subjected to name calling and mud slinging, adding insult to injury. We're not responsible for the wreck. We're not responsible for the foot injuries. We're not responsible for anything.

■ The trial court's denial of a motion for new trial is reviewed under an abuse of discretion standard. *Warren Davis Properties V, L.L.C. v. United Fire & Cas. Co.*, 111 S.W.3d 515, 520 (Mo.App.2003). An abuse of discretion occurs if a trial court's decision was clearly against reason and results in prejudice against the party seeking the new trial. *Criswell v. Short*, 70 S.W.3d 592, 594 (Mo.App.2002).

■ Generally, a trial court's ruling during closing argument is also reviewed for an abuse of discretion. *Id.* Here, however, no objections were made to the comments at issue during closing arguments. Therefore, Appellant failed to preserve the issue for appellate review and the point may only be reviewed for plain error. *St. Francis Med. Ctr. v. Hargrove*, 956 S.W.2d 949, 952 (Mo.App.1997).

■ Plain error results when the reviewing court deems manifest injustice or miscarriage of justice occurred. *Id.* Plain error is rarely applied in civil cases, and allegations of plain error are only considered within our discretion. *Guess v. Escobar*, 26 S.W.3d 235, 241 (Mo.App.2000).

■ Appellant concedes that counsel for Squibb and Crabtree is afforded wide latitude during closing arguments to argue facts and draw inferences from the evidence. *Criswell,* 70 S.W.3d at 594. She argues that the comments that reference the "lottery system" or "winning the lottery" were outside of that realm and were prejudicial, and thereby plain error, because they affected her substantial rights and resulted in manifest injustice or a miscarriage of justice.

As indicated by Appellant in her brief, no case law is readily apparent in Missouri that has addressed the propriety of similar comments. Courts in other states have addressed the issue, and we will consider those in our analysis.

Appellant brings one case to our attention; a case before the South Dakota Supreme Court in which defense counsel made several allegedly improper remarks that the appellant argued "misled and inflamed the jury and misstated the facts and the law." *Schoon v. Looby,* 670 N.W.2d 885, 887 (S.D.2003). Among the comments at issue in that case were when defense counsel discussed during closing arguments why the case included a claim for intentional infliction of emotional distress.

So, what's it doing in this law suit? Well, let's try to get some punitive damages. I mean, if this is the Lotto or Powerball or whatever they call it, let's really roll the dice big.

*Id.* at 887, n. 1.

Later, defense counsel discussed why the case included both the doctor and a medical clinic as defendants.

But, in any event, that's all beside the point but why do you do that? Well, let's show some real money and then go after it. We got sympathy on one end and now let's punish him by showing we have a doctor who has been successful with his life and he and his wife own some assets as he approaches retirement and let's show them Sioux Valley Clinic. Yeah, that's the ticket. Now we are on the way. Powerball here we come.

*Id.* at 888, n. 1.

The issues raised in *Schoon* were preserved through objections at trial and a motion for new trial, and the South Dakota Supreme Court found that the

accusation that the plaintiff was trying to hit the lottery by her lawsuit demeaned not only the plaintiff but also the judicial system itself and impugned the trial court's judgment of allowing the punitive damage claim to proceed. The comments denigrated the fairness, integrity, and public perception of the judicial system. Counsel's reference to playing the "lotto" or "powerball" or "rolling the dice" were only meant to inflame the jury and were beyond the bounds of proper final argument.

*Id.* at 891.

The *Schoon* Court determined that it was highly probable that defense counsel's comments affected the jury's verdict and harmed the substantial rights of the plaintiff. *Id.* at 892.

On its face, *Schoon* may be quite helpful to bolster Appellant's argument here. However, we note that in *Schoon,* which is acknowledged by Appellant, defense counsel not only made the lottery comments, but numerous others, falling into categories of asserting personal opinion and knowledge of a witness, misstatement of facts, misstatement of law, and inflammatory statements. *Id.* at 888.

Considering other cases aids our analysis and determination of whether *Schoon* is distinguishable, given the situation before us in this appeal. In a case heard before

the Florida Supreme Court, defense counsel likened the plaintiff's case to "cashing in on a 'lottery ticket.'" *Murphy v. Int'l Robotic Sys., Inc.,* 766 So.2d 1010, 1032 (Fla.2000). Similar to the case at bar, no objections were made during defense counsel's closing argument, yet the issue was in a motion for new trial that was denied. *Id.* The Florida Supreme Court determined that the comments were improper, but "not harmful, incurable, or of a character to so damage the fairness of the trial that the public's interest in our system of justice requires a new trial." *Id.*

In a criminal case in Connecticut, the prosecutor made comments during closing arguments that included a reference to the defendant "wanting to hit the lottery" by potentially filing a civil suit against the officers involved in his arrest. *State v. Cruz,* 71 Conn.App. 190, 800 A.2d 1243, 1252 (2002). During cross-examination of the defendant, an objection was sustained to this question asked by the state: "And you're basically hoping to hit the lottery, aren't you? You want to get money." *Id.* at 1253, n. 4.

The Connecticut court acknowledged that the lottery reference in closing argument was inappropriate, particularly in light of the objection during cross-examination of defendant. *Id.* at 1255, n. 5. However, the court determined that the comments did not substantially prejudice the defendant or his right to a fair trial. *Id.* at 1255. According to the court, "the prosecutor's comments were not sufficiently severe or numerous to form a pattern of serious misconduct throughout the trial." *Id.*

In a case decided by the North Dakota Supreme Court, the plaintiff failed to raise a timely objection to defense counsel's comments that characterized the case as "only being about money and nothing else." *Nesseth v. Omlid,* 574 N.W.2d 848,

850–51 (N.D.1998). The court found that the trial court did not abuse its discretion in denying the plaintiff's motion for new trial. *Id.* at 853. The court determined there was no abuse of discretion in the trial court's conclusion that the "comments did not require independent court intervention." *Id.* at 851.

Considering these cases along with *Schoon,* we cannot say that Appellant's rights were substantially affected or that a manifest injustice or miscarriage of justice occurred in the case at bar. Although we need not decide the issue here, it may well have been trial strategy on the part of Appellant's counsel to not object to the statements made during closing argument, so that he could respond to the statements. No plain error occurred and the trial court did not abuse its discretion in denying Appellant's motion for new trial. Point I is denied.

*Point II: Motion for Allocation of Expert Expenses to Defendants*

■ In her second point, Appellant argues that the trial court erred in overruling her motion for allocation of expert expenses. Within the motion, Appellant contended that it was the defendants' responsibility to pay the expenses for depositions of Appellant's non-retained experts, depositions that were requested by defendants. The non-retained experts at issue were all treating physicians of Appellant.

Rule 56.01 is important to the analysis of this point. Rule 56.01(b)(4) provides:

Trial Preparation: Experts. Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of Rule 56.01(b)(1) and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

(a) A party may through interrogatories require any other party to

identify each person whom the other party expects to call as an expert witness at trial providing such expert's name, address, occupation, place of employment and qualifications to give an opinion, or if such information is available on the expert's curriculum vitae, such curriculum vitae may be attached to the interrogatory answers as a full response to such interrogatory, and to state the general nature of the subject matter on which the expert is expected to testify, and the expert's hourly deposition fee.

(b) A party may discover by deposition the facts and opinions to which the expert is expected to testify. Unless manifest injustice would result, the court shall require that the party seeking discovery from an expert pay the expert a reasonable hourly fee for the time such expert is deposed.

Rule 56.01(b)(5), which was inserted by a 1995 amendment that took effect on July 1, 1996, provides:

(5) Trial Preparations: Non-retained Experts. A party, through interrogatories, may require any other party to identify each non-retained expert witness, including a party, whom the other party expects to call at trial who may provide expert witness opinion testimony by providing the expert's name, address, and field of expertise. For the purpose of Rule 56.01(b)(5), an expert witness is a witness qualified as an expert by knowledge, experience, training, or education giving testimony relative to scientific, technical or other specialized knowledge that will assist the trier of fact to understand the evidence. Discovery of the facts known and opinions held by such an expert shall be discover-able in the same manner as for lay witnesses.

Appellant directs our attention to cases that were decided prior to the addition of provision (b)(5) to Rule 56.01. The first case of note is a Missouri Supreme Court case that discussed the status of treating physicians as experts, a case that did not involve any issue regarding payment for depositions of such witnesses, but rather fiduciary duties and the relationship that exists between physicians and patients. *Brandt v. Med. Defense Associates*, 856 S.W.2d 667, 673 (Mo.banc 1993). The Court stated that a "treating physician is first and foremost a fact witness, as opposed to an expert witness." *Id.* The Court continued its analysis of the relationship between a treating physician and an expert.

Because the treating physician uses medical training and skill both in diagnosing and treating the patient and in describing to the jury the plaintiff's condition and treatment, it is often assumed that the treating physician is automatically an expert witness. Actually, the treating physician only functions as an expert witness to the extent that one or both of the parties ask the witness to use the basic facts to draw conclusions and express opinions on relevant medical issues. *Id.*

The *Brandt* case was referenced in a case decided by the Western District of this Court in 1995, in which the Court was asked to determine whether the trial court abused its discretion by sustaining a motion for allocation of expert expenses. *Mulberry v. Baker*, 897 S.W.2d 624 (Mo. App.1995). The Court first pointed out that Missouri courts have held that a treating physician is not an expert under Rule 56.01(b)(4). *Id.* at 626. The Court then compared the cases in which that had

been held to the portions of the *Brandt* case outlined above. *Id.*

After that comparison, the Court noted that the treating physician had testified to his qualifications, biases, and opinions regarding the medical issues in the case, and therefore, it was within the trial court's broad discretion to find the testimony of the treating physician to be in the nature of testimony of an expert. *Id.* at 626–27. Thus, according to the Court, it was within the trial court's discretion to sustain the motion and require the defense to pay the fees associated with the deposition of the treating physician. *Id.* at 627.

In another Western District case from 1995, the Court held that a treating physician, as a witness who has personal knowledge of the events surrounding the litigation and is not hired in anticipation of the litigation, is not an expert under Rule 56.01(b)(4). *Hruban v. Hickman Mills Clinic, Inc.*, 891 S.W.2d 188, 190 (Mo.App. 1995).

All of the cases discussed thus far, *Brandt, Mulberry, Hruban,* were decided prior to the effective date of the amendment to Rule 56.01 that added the provision regarding non-retained experts, section (b)(5), to the rule. In addition to considering the cases listed above, Appellant asks that we consider a case decided in 2000, after the provision was added, which compares Rule 56.01(b)(4) and Rule 56.01(b)(5). *State ex rel. Tracy v. Dandurand,* 30 S.W.3d 831 (Mo. banc 2000). Appellant is correct that this case discusses differences in the discovery process between the two provisions. *Id.* at 834–35. However, Appellant's conclusion that "Rule 56.01(b)(5) affects how discovery on non-retained experts witnesses is conducted but does not affect the trial court's discretion in ordering witness fees to be paid to a non-retained expert[,]" goes beyond the holding and issues in *Tracy.*

We must determine whether, given Rule 56.01 as it was written at the time of the facts of the case before us, it is an abuse of discretion for a trial court to not compel such payment. We find that it is not.

■ The important distinction is not whether a deposed witness is an expert or not, but rather, whether that witness, as an expert, is retained or non-retained. It is that distinction which distinguishes the provisions within Rule 56.01. The Missouri Supreme Court acknowledges that a treating physician, as someone who has direct knowledge of the facts of the case and, therefore, is not retained solely for the purposes of the litigation, may also be qualified to render expert opinions in the case. *Tracy,* 30 S.W.3d at 834 n. 4. We conclude that a treating physician ordinarily has "direct knowledge, or involvement in, the events in controversy" and, under the facts of this case, is not a retained expert under Rule 56.01(b)(4), but is a non-retained expert under Rule 56.01(b)(5). *See id.*

The section addressing experts under Rule 56.01(b)(4) contains a provision that mandates that the trial court "require that the party seeking discovery from an expert pay the expert a reasonable hourly fee for the time such expert is deposed." Rule 56.01(b)(4)(b). When the rule was amended in 1995, section (b)(5) was added, which included language that addressed discovery issues similar to those addressed under (b)(4)(a). A paragraph concerning payment for the time of a non-retained expert was not added. We can only assume that such an omission was intentional and not ambiguous. *See Home Builders Ass'n of Greater St. Louis, Inc. v. City of Wildwood,* 107 S.W.3d 235, 239 (Mo.banc 2003). As there is no provision requiring payment, there was no abuse of discretion

in denying Appellant's motion. Point II is denied.

## Conclusion

The judgment is affirmed.

BARNEY, P.J., and GARRISON, J., concur.