James and Carolyn KEHR, Appellants,

v.

Stephen KNAPP, D.O., Respondent.

No. ED 83203.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 25, 2004.

Mark I. Bronson, Newman Bronson & Wallis, St. Louis, MO, for appellant.

Robert S. Rosenthal, Brown & James, P.C., St. Louis, MO, for respondent.

Before BOOKER T. SHAW, P.J., LAWRENCE G. CRAHAN, J., and PATRICIA L. COHEN, J.

PER CURIAM.

James and Carolyn Kehr ("the Kehrs") brought suit against Dr. Knapp for medical negligence and loss of companionship in connection with Dr. Knapp's alleged failure to diagnose Mr. Kehr's prostate cancer. The jury returned a verdict in favor of Dr. Knapp. On appeal, the Kehrs contend that the trial court erred when it denied their: (1) motion to bar the testimony of Dr. Piephoff, one of Mr. Kehr's treating physicians; (2) motion for a continuance; and (3) motion for a new trial on the basis that Dr. Knapp failed to identify Dr. Piephoff as a "retained" expert rather than a "non-retained" expert. Because we conclude that Dr. Piephoff functioned as a non-retained expert and his identity and the scope of his testimony were disclosed prior to trial, we affirm.

## I. Background

Viewed in the light most favorable to the verdict, the evidence adduced at trial establishes that Mr. Kehr initially saw Dr. Knapp in March of 1998 for a routine physical examination.[1] As part of the examination, Dr. Knapp ordered a Prostate Specific Antigen ("PSA") test. A nurse in Dr. Knapp's office informed Mr. Kehr that the results of the PSA were slightly elevated and that Mr. Kehr should have the test repeated in two months. Mr. Kehr did not return to Dr. Knapp to have the PSA test repeated.

In 1999, as a result of insurance changes, Mr. Kehr selected a new primary care physician. This physician performed a routine physical examination and ordered a PSA test. The test indicated that Mr. Kehr's PSA was high and accordingly, the physician referred Mr. Kehr to a urologist, Dr. Alan Stein. Dr. Stein performed a biopsy that revealed prostate cancer. Dr. Stein prescribed treatment and referred Mr. Kehr to Dr. James Piephoff, a radiation oncologist. After determining the stage of Mr. Kehr's prostate cancer, Dr. Piephoff treated Mr. Kehr with six weeks of external radiation. Dr. Piephoff continued to care for Mr. Kehr through March 2003.

The Kehrs filed suit against Dr. Knapp on December 13, 2001. In their first amended petition, the Kehrs alleged that Dr. Knapp provided inadequate care and treatment by, *inter alia*, (1) failing to inform Mr. Kehr that a PSA test was abnormally elevated and (2) failing to recommend that Mr. Kehr undergo further testing or follow-up treatment.

In preparation for trial, the parties engaged in discovery. On February 20, 2003, Dr. Knapp filed Supplemental Answers to Plaintiff's Interrogatory Nos. 2 and 3. Interrogatory 3 sought identification of non-retained experts. In his answer to Interrogatory No. 3, Dr. Knapp stated that he "may call James Piephoff, M.D., 11155 Dunn Road, Suite 181E St. Louis, MO 63136, to testify regarding his care and treatment of Mr. Kehr which may include causation testimony and testimony regarding prognosis."

1. The Legal File provided by the Kehrs contains only selected portions of the transcript.

On April 3, 2003, three days before trial, the Kehrs filed a Motion to Strike Witness Dr. Piephoff, M.D. or alternatively, Motion for Continuance. In support of their motions, the Kehrs alleged, *inter alia:* (a) Dr. Piephoff was no longer a treating physician/non-retained expert because Dr. Knapp provided Dr. Piephoff with experts' depositions to review; (b) Dr. Knapp failed to disclose that Dr. Piephoff was a retained expert within the meaning of Rule 56.01(b)(4) and (5); and (c) unless the court continued the trial to allow the Kehrs to take Dr. Piephoff's deposition, the Kehrs would be prejudiced. The trial court denied the Kehrs' motion on April 3, 2003.

At trial, the Kehrs called Dr. Stein, Mr. Kehr's treating urologist. Dr. Stein acknowledged he was being paid three hundred and fifty dollars per hour for his time. Dr. Stein testified that, at the time of Mr. Kehr's initial visit, Mr. Kehr had a PSA of 9.86 and that Dr. Stein suspected Mr. Kehr had cancer. After a standard urological exam, Dr. Stein noted an enlarged prostate and recommended a biopsy. Dr. Stein performed a biopsy and discovered prostate cancer. A pathologist graded the cancer as a Gleason eight, indicating an aggressive cancer with a poor prognosis.

Dr. Stein ordered additional tests to determine the extent, if any, of the spread of the cancer and placed Mr. Kehr on hormone therapy intended to shrink the cancer. Following a bone scan, Dr. Stein graded the tumor as a bulky B–2 or a C, meaning that the tumor extended beyond the confines of the prostate gland. Because Dr. Stein was still unsure whether to recommend surgery, he ordered a prostascint scan to clarify whether the cancer had spread to the lymph nodes. Based on the prostascint scan, Dr. Stein concluded that the cancer was a D or T–4, meaning that it had metastasized to the lymph nodes. Following the test results, Dr. Stein referred Mr. Kehr to Dr. Piephoff. Dr. Stein continued to treat Mr. Kehr with hormonal suppression.

Dr. Stein stated that, in his opinion, Dr. Knapp was negligent because he did not follow-up with Mr. Kehr when he discovered an elevated PSA in 1998. Dr. Stein further opined that at the time of his initial visit with Dr. Knapp, Mr. Kehr's chance of survival and long-term cure was ninety percent and, at the time of trial, Mr. Kehr's chance of survival was ten percent.

Dr. Knapp called two retained experts and Dr. Piephoff in his case. Dr. Piephoff commenced his testimony by stating that, prior to testifying, he reviewed his own records, several depositions in the case and several articles to confirm the correctness of his treatment. Following Dr. Piephoff's initial testimony, the Kehrs' counsel objected and renewed their pre-trial motion to strike Dr. Piephoff as a witness. In addition to incorporating the arguments asserted in their earlier motion, the Kehrs' counsel argued that he believed Dr. Piephoff intended to testify to matters "over and above the care and treatment" he rendered to Mr. Kehr.

The trial court denied the renewed motion to strike, stating that: (1) the defendant had specifically alerted plaintiff to the possibility that Dr. Piephoff would be called; (2) calling Dr. Piephoff in the defense case did not convert him from a treating physician to a retained expert; (3) that as a treating physician, Dr. Piephoff was entitled to his opinion that Mr. Kehr's cancer had not metastasized; and (4) reliance on professional literature to support his opinion regarding his treatment was not improper.

Resuming his testimony, Dr. Piephoff acknowledged that he charged five hundred dollars per hour for his time. On

cross-examination, Dr. Piephoff stated that, as of the time of trial, the defendant had paid him five thousand dollars.

Dr. Piephoff described his initial examination of Mr. Kehr and his resultant conclusion that Mr. Kehr presented with a Stage C cancer. In addition, Dr. Piephoff discussed his review of, and conclusions regarding, the prostascint scan. Dr. Piephoff, unlike Dr. Stein, viewed the prostascint scan as evidencing a Stage C cancer, rather than a Stage D. Dr. Piephoff's contemporaneous records, which the Kehrs reviewed prior to trial, reflected this conclusion.

Dr. Piephoff described his treatment plan, which consisted of external beam therapy without seed implant. Dr. Piephoff further stated that his treatment plan was based on his opinion that Mr. Kehr's cancer was a Stage C, rather than a Stage D. At the time treatment commenced, Dr. Piephoff concluded that Mr. Kehr had more than a seventy percent chance of survival. Following the completion of radiation therapy and a six-month waiting period, Mr. Kehr's PSA dropped to undetectable levels. In March 2003, at the last visit with Dr. Piephoff, Mr. Kehr's PSA remained at undetectable levels.

Neither defense counsel nor plaintiffs' counsel asked Dr. Piephoff to render an opinion about the adequacy of Dr. Knapp's care and treatment of Mr. Kehr. In contrast to plaintiffs' counsel's direct examination of Dr. Stein, defense counsel did not ask Dr. Piephoff to state whether he believed Dr. Knapp was negligent. Thus, contrary to the Kehrs' contention on appeal, Dr. Piephoff was not used to rebut Dr. Stein's opinion that Dr. Knapp was negligent. In addition, Dr. Piephoff was not asked whether Dr. Knapp's conduct caused a delay in diagnosis or treatment that resulted in a lost chance of survival. The primary disagreement between Mr.

Kehr's treating physicians, Dr. Stein and Dr. Piephoff, was that Dr. Piephoff believed, based on the stage of the cancer and Mr. Kehr's response to treatment, Mr. Kehr had a better prognosis than offered by Dr. Stein.

At the close of evidence, the jury rendered a verdict in favor of Dr. Knapp. The Kehrs filed a Motion for New Trial based on the court's failure to bar Dr. Piephoff as a witness or grant a continuance. The trial court denied the Kehrs' Motion for a New Trial on July 9, 2003. This appeal followed.

## II. Standard of Review

We review the trial court's denial of the Kehrs' motions to bar Dr. Piephoff's testimony and for continuance under an abuse of discretion standard. We recognize that trial courts are vested with broad discretion in administering the rules of discovery. *State ex. rel. LaBarge v. Clifford*, 979 S.W.2d 206, 208 (Mo.App. E.D. 1998). Where we are analyzing a trial court's actions in the context of a response to pre-trial discovery, "we consider whether, under the totality of the circumstances, the challenged act has resulted in prejudice or unfair surprise." *Siller v. Rivituso–Siller*, 129 S.W.3d 433, 436 (Mo.App. E.D.2004). The "[e]xercise of this discretion should be directed toward the accomplishment of fundamental fairness and the avoidance of unfair surprise." *Id.* (citing *Ellis v. Union Electric Co.*, 729 S.W.2d 71, 76 (Mo.App. E.D.1987)).

Likewise, we review the trial court's denial of a motion for new trial for abuse of discretion. *Adams v. Squibb*, 128 S.W.3d 149, 152 (Mo.App. S.D.2004). Accordingly, we will not reverse "unless there is a substantial or glaring injustice." *Fierstein v. DePaul Health Ctr.*, 24 S.W.3d 220, 225 (Mo.App. E.D.2000). Moreover, if

"reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Sherar v. Zipper,* 98 S.W.3d 628, 632 (Mo.App. W.D. 2003) (citation omitted).

### III. Discussion

In their sole point on appeal, the Kehrs contend that the trial court erred in overruling their motion to strike Dr. Piephoff's testimony or alternatively, motion for a continuance as well as their Motion for a New Trial because Dr. Knapp "failed to disclose ... that Dr. Piephoff was a 'retained expert' as opposed to a 'non-retained expert'." The Kehrs contend that the defense was required to identify Dr. Piephoff as a retained expert because Dr. Knapp compensated Dr. Piephoff for his time preparing for trial and some of the preparation involved reading other experts' deposition transcripts. The Kehrs further assert that had Dr. Knapp identified Dr. Piephoff as a retained expert prior to trial, they would have taken Dr. Piephoff's deposition prior to trial. Having chosen not to take Dr. Piephoff's deposition because they assumed Dr. Piephoff was a non-retained expert, the Kehrs contend that they were prejudiced at trial because their counsel was unable to effectively cross-examine Dr. Piephoff.

A review of the record establishes that the trial court did not abuse its discretion in treating Dr. Piephoff as a treating physician or non-retained expert rather than a retained expert. At trial, Dr. Piephoff limited his trial testimony to his care and treatment of Mr. Kehr as well as Mr. Kehr's prognosis and did not offer any opinions developed solely in anticipation of litigation or trial. Because Dr. Knapp timely disclosed Dr. Piephoff as a non-retained expert and identified the areas of

his testimony, no unfair surprise resulted from Dr. Piephoff's testimony.

#### A. Dr. Piephoff was a treating physician, not a retained expert.

Expert witnesses whose identity must be disclosed under Rule 56.01(b)(4) ("retained experts") are individuals "engaged by a party in anticipation of litigation in order to testify about scientific or technical matters." *DeLaporte v. Robey Bldg. Supply, Inc.,* 812 S.W.2d 526, 535 (Mo.App. E.D.1991). A retained expert typically has no knowledge about the case or the facts in controversy prior to being retained and instead gathers facts about the controversy through "documents, materials and other information provided to him" by the attorney who contacted him. *State ex rel. Tracy v. Dandurand,* 30 S.W.3d 831, 834 (Mo. banc 2000). A treating physician, however, has knowledge of the facts of the case and is not retained solely for the purpose of litigation. *Adams,* 128 S.W.3d at 156. "The treating physician is first and foremost a fact witness, as opposed to an expert witness." *Brandt v. Medical Defense Assoc.,* 856 S.W.2d 667, 673 (Mo. banc 1993).

Applying these principles to the case at bar, it is clear that Dr. Piephoff functioned as a treating physician and not as a retained expert. First, the record establishes that the scope of Dr. Piephoff's testimony was limited to a discussion of Mr. Kehr's care and treatment. At no time was Dr. Piephoff asked to provide an opinion regarding the appropriate standard of care, whether Dr. Knapp was negligent or whether Dr. Knapp's conduct resulted in a material lost chance of survival. Rather, the dispute illuminated by Dr. Stein's and Dr. Piephoff's testimony related to Mr. Kehr's stage of cancer and his prognosis. An opinion regarding the stage of cancer was an important element in Dr. Piephoff's explanation of his treatment plan and was

not an opinion developed in anticipation of litigation or trial. Likewise, Dr. Piephoff's opinion regarding Mr. Kehr's prognosis was based solely on facts learned during his care and treatment and was not an opinion developed for trial.

While appearing to acknowledge that Dr. Piephoff properly testified to Mr. Kehr's care and treatment as well as opinions developed during the course of his care and treatment, the Kehrs strenuously argue that, regardless of the scope of Dr. Piephoff's testimony, Dr. Knapp transformed Dr. Piephoff into a retained expert when he paid Dr. Piephoff for preparation, which included reading some transcripts, prior to testifying at trial. Although the Kehrs express outrage at Dr. Knapp's conduct, they cite no authority for the proposition that compensating a treating physician for time expended in connection with a case transforms him or her into a retained expert within the meaning of Rule 56.01(b)(4). Nor do the Kehrs support the proposition that if the treating physician reads another expert's deposition prior to trial he or she automatically becomes a retained expert.

At the heart of the Kehrs' argument is a profound disagreement with the notion that a defendant is permitted to benefit from the testimony of the plaintiff's treating physician. In short, as in *Brandt*, "[t]he plaintiff's contention here seems to be bottomed on the assumption that a treating physician's duty to act with good faith requires the physician to give testimony that is favorable and beneficial to the patient and detrimental to the opponent." 856 S.W.2d at 673. The Supreme Court in *Brandt* rejected this proposition and noted, in a foreshadowing of what happened here: "If, for instance, a treating physician has determined that a patient made a full recovery and this issue is relevant to the litigation, the treating phy-

sician may, and in fact should, testify to this fact even though the patient may be claiming to the contrary." *Id.* at 673. Although doubts about the wisdom of allowing the defense the kind of access to treating physicians that obviously occurred here were expressed in Judge Holstein's concurrence in *Brandt*, it is the majority opinion which controls and drains the Kehrs' argument of its persuasiveness. *Id.* at 675–76.

While Missouri courts have not addressed the precise issue the Kehrs raise, the general principles discussed above suggest that when determining whether a treating physician should be characterized as either a retained or non-retained expert, the proper focus is on the scope of the proposed testimony. Thus, we hold that if a treating physician's testimony is limited to a discussion of plaintiff's care and treatment and opinions regarding causation and prognosis that are developed based upon information obtained during such care and treatment, compensation alone does not transform the treating physician into a retained expert. In addition, following a review of the trial transcript, it is clear that, in forming the opinions he expressed at trial, Dr. Piephoff did not rely on material other than records he generated while caring for Mr. Kehr and medical knowledge generally known in his specialty area. Accordingly, we conclude that, under the circumstances of this case, Dr. Piephoff's review of deposition transcripts did not alter his status as a non-retained expert.

**B. Dr. Knapp timely disclosed Dr. Piephoff as a non-retained expert.**

The Kehrs contend that the trial court erred when it denied their motion to bar Dr. Piephoff's testimony or, in the alternative, for a continuance because counsel was unfairly blindsided by Dr. Pie-

phoff's testimony at trial. In support of their contention, the Kehrs rely on *Manahan v. Watson*, 655 S.W.2d 807 (Mo.App. E.D.1983). *Manahan*, however, is easily distinguishable. In *Manahan*, we found unfair surprise when the trial court allowed testimony from a witness who had not been disclosed in the response to interrogatories. *Id.* at 809. In this case, however, there is no dispute that Dr. Knapp disclosed Dr. Piephoff's identity and the scope of his testimony in his Supplemental Answers to Interrogatories. Specifically, in his supplemental answer to Interrogatory No. 3, which sought identification of non-retained experts, he stated that he "may call James Piephoff, M.D., 11155 Dunn Road, Suite 181E St. Louis, MO 63136, to testify regarding his care and treatment of Mr. Kehr which may include causation testimony and testimony regarding prognosis."

As the trial court stated, "it's obvious that [plaintiff's counsel] is surprised by Dr. Piephoff's testimony. But that surprise is a result of a failure to ask Dr. Piephoff what his testimony may be." We agree. Given the totality of the circumstances, the Kehrs have not demonstrated an abuse of discretion. Point denied.

## IV. Conclusion

The judgment of the trial court is affirmed.