Bonnie Jean MUSSELMAN

v. .

Paula E. PHILLIPS, et al.

Civ. A. No. WMN–96–4075.

United States District Court,
D. Maryland.

Oct. 10, 1997.

Clifford E. Snyder, Jr., Frederick, MD, for plaintiff.

Daniel Karp, Allen, Johnson, Alexander & Karp, Baltimore, MD, for defendants.

### MEMORANDUM AND ORDER

GRIMM, United States Magistrate Judge.

This case has been assigned to me for the resolution of discovery disputes pursuant to 28 U.S.C. § 636(b) and Local Rule 301 (D.Md.1997). Presently pending before the Court is a dispute regarding the discoverability of certain information communicated by plaintiff's counsel to two experts who have been retained to testify at trial on behalf of the plaintiff. This Memorandum and Order deals with certain of these documents, namely seven letters from counsel for the plaintiff to the experts. For reasons set forth below, I will order that five of the documents be produced to the defendants.

### BACKGROUND

The plaintiff, Ms. Bonnie Jean Musselman, has brought this action asserting a variety of causes of action, including the intentional

infliction of emotional distress (count 1) and violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, (count 5) against numerous individual defendants as well as the Board of County Commissioners for Frederick County. Both of these counts seek damages for emotional and mental injuries allegedly suffered by Ms. Musselman.

On June 5, 1997, I granted the defendants' motion for a mental examination of the plaintiff pursuant to Fed.R.Civ.P. 35(a). In that Order, I also directed that future discovery disputes could be submitted to me in letter format, to expedite their resolution and minimize expense. The present discovery dispute was raised in this way, and involves another aspect of the plaintiff's claims for emotional and mental injuries. Specifically, the plaintiff is resisting the production of portions of the records maintained with respect to her by two treating psychologists, Drs. Allan and Wendy Levy, as well as several letters written by plaintiff's counsel to the Levy, discussing the case. The basis for the objection is that the information is not discoverable because its disclosure is precluded by the attorney–client and/or work product privileges.[1]

By letter Order dated September 12, 1997, I directed plaintiff's counsel to produce the foregoing documents for review *in camera.* By letter dated September 25, 1997, the plaintiff complied, sending me a total of 63 pages of documents. This Memorandum and Order addresses only the letters from plaintiff's counsel to the Levys, which may be described as follows: (1) document one, page 50, a letter dated 8/18/95 from plaintiff's counsel to the Levys. This letter discusses the legal standard which must be met under Maryland law in order for a claimant to obtain workers' compensation benefits for mental disease arising from work–induced stress. The letter asks the Levys to take into consideration this law in connection with

developing their opinions with regard to the causation of the plaintiff's claimed injuries; (2) document two, pages 9, 11 and 13, a letter dated 11/3/95 from the plaintiff's attorney to the Levys regarding their psychological evaluation of the plaintiff for workers' compensation benefits, discussing what should be covered in the Levys' opinion; (3) document three, pages 51–53, a letter dated 3/5/97 from counsel for the plaintiff to the Levys discussing their possible role as expert witnesses in the pending litigation, addressing their compensation, and outlining in some detail (including parenthetical discussion of facts pertinent to the plaintiff's claimed injuries) what must be included in the expert report required by Fed.R.Civ.P. 26(a)(2)(B); (4) document four, pages 54–56, a letter dated 3/25/97 from plaintiff's attorney to the Levys which supplements the preceding letter and provides a format for the Rule 26(a)(2)(B) report, including the identification of four areas where the experts should provide opinions; (5) document five, page 47, a letter dated 4/7/97 from plaintiff's attorney to the Levys enclosing a draft report, apparently prepared by the attorney after a telephone conversation with Dr. Wendy Levy; (6) document six, pages 57–62, an undated draft of a letter to the Court regarding the discovery dispute which is the subject of this Memorandum and Order; and (7) document seven, page 63, a letter dated 9/16/97 from plaintiff's counsel to the Levys discussing my Order of September 12, 1997, and its effect on the disclosure of the documents which are the subject of this dispute.

It is clear from my review of these records that they were prepared by plaintiff's counsel in anticipation of litigation. It is equally undisputed that the Levys have been retained by the plaintiff to offer opinion testimony at trial. As to each of the foregoing documents, plaintiff's counsel asserts that

---

1. Whether the work product doctrine is technically a privilege, as opposed to an immunity from discovery, is largely an academic question today. *See* 1 Scott N. Stone & Robert K. Taylor, *Testimonial Privileges* § 2.03 (1995) (noting that since the Supreme Court's decision in *United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), the privilege or immunity debate has become a semantic exercise, and that "the im-

portant question has now become what circumstances are necessary to overcome the work product protection, regardless of whether that protection is termed an immunity from discovery or a qualified privilege."). For ease of reference the work product doctrine under Fed.R.Civ.P. 26(b)(3) is referred to herein as the "work product privilege" or the "work product rule."

they are not discoverable because they are protected attorney work product. For reasons more fully explained below, I will order that documents (1) through (5) be produced.

## DISCUSSION

The issue which presents itself in this case—whether an attorney's communications with an expert retained to provide opinion testimony at trial regarding the subject matter of that testimony may be discovered by an adverse party—is one which is the subject of a vigorous debate, and the cases and commentaries are clearly divided regarding whether such communications are discoverable. Neither party has cited, and the Court's research has not uncovered, any published opinion by either the Fourth Circuit or this Court on this issue. Accordingly, this analysis must be undertaken. The starting point is the scope of the work product rule under Fed.R.Civ.P. 26(b)(3).

■ The work product privilege has been incorporated into Federal Rule 26(b)(3),[2] which provides, relevantly:

Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon showing that the party seeking discovery has substantial need of the materials in the preparation or the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosures of the mental impressions, conclusions, opinions, or legal theories of an attorney of other representative of a party concerning the litigation.

Fed.R.Civ.P. 26(b)(3). The leading case in this Circuit addressing the scope of work product rule under Federal Rule 26(b)(3) is *National Union Fire Ins. Co. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980 (4th Cir.1992). There, the Fourth Circuit noted that:

Proper application of the work product rule requires recognition and accommodation of two competing policies. On the one hand, fairness in the disposition of civil litigation is achieved when the parties to the litigation have knowledge of the relevant facts, and therefore the discovery rules are given "a broad and liberal treatment." On the other hand, our adversary system depends on the effective assistance of lawyers, fostered by the privacy of communications between lawyer and client and the privacy in development of legal theories, opinions, and strategies for the client. .... The policies of protecting work product and permitting liberal discovery are accommodated in the Federal Rules of Civil Procedure by protecting absolutely the "mental impressions, conclusions, opinions [and] legal theories ... concerning the litigation" but permitting discovery of other work product upon a showing of "substantial need." ...

Thus, the jurisprudence of Rule 26(b)(3), divides work product into two parts, one of which is '*absolutely*' immune from discovery and the other only qualifiedly immune. As a philosophical extension of the attorney-client privilege ... the pure work product of an attorney insofar as it involves "mental impressions, conclusions, opinions or theories ... concerning litigation" is immune to the same extent as an attorney-client communication.... Thus in resolving the question of whether matters are immune from discovery because of work product rule, attention must be turned first to whether the documents or tangible things were prepared in anticipation of litigation or for trial and then, for materials other than legal opinion or theo-

---

**2.** *National Union Fire Ins. Co. v. Murray Sheet Metal Co. Inc.*, 967 F.2d 980, 983–84 (4th Cir. 1992); *B.C.F. Oil Ref., Inc. v. Consolidated Edi-son Co.*, 171 F.R.D. 57, 63 (S.D.N.Y.1997); *Magee v. The Paul Revere Life Ins. Co.*, 172 F.R.D. 627, 639 (E.D.N.Y.1997).

ry, to whether the requesting party has demonstrated a substantial need.

*Id.* at 983–84 (emphasis added) (citations omitted). *Accord Better Gov't Bureau, Inc. v. McGraw,* 106 F.3d 582, 607 (4th Cir.1997) ("In contrast to fact work product, which is discoverable 'upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship,' opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.' ").[3] Whether the applicable immunity from discovery is qualified—as for fact work product—or "nearly absolute"—for opinion work product—it may, of course, be waived. *United States v. Pollard (In re Martin Marietta Corp.),* 856 F.2d 619, 623–27 (4th Cir.1988). *See generally* 8 Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 2016.2 (1994); Edna S. Epstein, *The Attorney–Client Privilege and the Work–Product Doctrine* 415–22 (1996). In addition, as next will be seen, there is a growing body of case law which holds that if an attorney provides information to an expert witness retained to offer opinion testimony at trial, and the expert considers this information in forming his or her opinions, it is discoverable. Once again, the starting point for understanding these cases is Rule 26.

Federal Rule of Civil Procedure 26(a)(2)(B) requires parties to disclose the opinions of expert witnesses retained to testify at trial. Fed.R.Civ.P. 26(a)(2)(B). Among other things, the expert's report must include the underlying bases for the opinions and "the data or other *information considered by the witness* in forming the opinions.". *Id.* (emphasis added). The commentary to the Rule makes it clear that "other information" considered by the expert includes work product provided by the attorney who retained the expert:

Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports, and indeed, with experts such as automobile mechanics, this assistance may be needed.... The report is to disclose the data and other information considered by the expert and any exhibits or charts that summarize or support the expert's opinions. *Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.*

Commentary to Fed.R.Civ.P. 26(a)(2)(B), 146 F.R.D. 401, 634 (1993) (emphasis added).

Based largely on the Advisory Committee's Note to Rule 26(a)(2)(B), a number of courts and commentators have accordingly concluded that if an attorney provides work product to an expert who considers it in forming opinions which he or she will be testifying to at trial, this information is no longer privileged and must be disclosed. *See, e.g.,* 8 Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 2016.2, at 250 (1994) ("At least with respect to experts who testify at trial, the disclosure requirement of Rule 26(a)(2), adopted in 1993, was intended to predetermine further discussion and mandate disclosure despite [the work product] privilege."); Lee Mickus, *Discovery of Work Product Disclosed to a Testifying Expert Under the 1993 Amendments to the Federal Rules of Civil Procedure,* 27 Creighton L.Rev. 773, 808 (1994) (noting that work product materials disclosed to a testifying expert should be discoverable "not just because the Advisory Committee to the 1993 Amendments envisioned Federal Rule 26 operating in that manner, but also because broad discovery of these materials provides an advantageous approach without detracting from the true goals of the work product doctrine."); Michael Plunkett, Comment,

---

**3.** It is noteworthy that the Fourth Circuit's opinions in *National Union Fire Ins. Co. v. Murray Sheet Metal Co., Inc.,* and *Better Gov't Bureau Inc. v. McGraw, supra,* did not involve the precise issue presented in this case, and did not under-

take to interpret the discoverability of opinion work product communicated to a retained expert, or the provisions of Fed.R.Civ.P. 26(a)(2)(B).

*Discoverability of Attorney Work Product Reviewed by Expert Witnesses: Have the 1993 Revisions to the Federal Rules of Civil Procedure Changed Anything?,* 69 Temp. L.Rev. 451, 483 (1996) ("Both the [1993 Amendments to the Federal Rules] and the Advisory Committee Notes indicate that materials supplied to an expert are subject to discovery.").

Federal trial courts have reached similar conclusions. In *Barna v. United States,* No. 95 C 6552, 1997 WL 417847 (N.D.Ill. July 28, 1997), for instance, the court held that any information considered by a testifying expert in forming his or her opinions is discoverable, even if it contains attorney work product. The court found that such disclosure is necessary for effective cross-examination of experts, and "[w]ithout pre-trial access to attorney-expert communications, opposing counsel may not be able to effectively reveal the influence that counsel has achieved over the expert's testimony." *Id.* at *2.

The United States District Court for the Southern District of New York has recently reached the same conclusion. *See B.C.F. Oil Ref., Inc. v. Consolidated Edison Co.,* 171 F.R.D. 57, 66 (S.D.N.Y.1997). After analyzing the law prior to and following the 1993 amendments to Rule 26, the *B.C.F.* court concluded that one of the very purposes of Rule 26(a)(2)(B) was to resolve the tension which had previously existed between the work product privilege and disclosure of expert material by requiring that "all materials furnished to an expert must be disclosed in an expert report." *Id.* at 66. The court added that the Advisory Committee Note to Rule 26 "does not indicate that the material considered by the expert that must be disclosed is restricted to factual information. . . . Rather, the [commentary] evinced an intent to require parties to produce attorney opinions given to the expert and considered by the expert in forming his or her opinion." *Id.*

Likewise, in *Karn v. Rand,* 168 F.R.D. 633, 639–40 (N.D.Ind.1996), the court held that Rule 26(a)(2)(B) requires disclosure of any information considered by a testifying expert in reaching his or her opinion, which means anything reviewed by an expert who will testify, including written or oral lawyer–expert communications, even though such information may constitute opinion work product. The court noted that this is a "bright line" rule which promotes the following policies: (1) it enables effective cross-examination of expert witnesses, which is essential to "the integrity of the truth–finding process" because "useful cross-examination and possible impeachment can only be accomplished by gaining access to all of the information that shaped or potentially influenced the expert witness's opinion"; (2) such disclosure does not "violate the core precepts of the work product doctrine, which, at bottom, is intended to allow counsel unfettered latitude to develop new legal theories or conduct factual investigation, because, when an attorney provides work product to an expert retained to offer testimony at trial, this does not result in counsel developing new legal theories or enhance the conduct of fact investigation," since "the work product either informs the expert as to what counsel believes are relevant facts, or seeks to influence him to render a favorable opinion"; and (3) the "bright line test" actually preserves the work product privilege, because "there is no lingering uncertainty as to what documents will be disclosed. Counsel can easily protect a genuine work product by simply not divulging it to the expert." *Id.* at 639–41.

Despite what appears to be a growing trend in favor of requiring the disclosure of both fact and opinion work product which is provided to experts retained to testify at trial, there remains a considerable body of authority which strongly maintains that at least opinion work product is not discoverable. *See, e.g., Magee v. The Paul Revere Life Ins. Co.,* 172 F.R.D. 627, 642 (E.D.N.Y. 1997) ("Having reviewed the relevant case law, the text of Rule 26(a) and (b) and the associated commentary provided by the advisory committee, the Court holds that 'the data or other information considered by [an expert] witness in forming [his] opinions' required to be disclosed in the expert's report mandated under Rule 26(a)(2)(B) extends only to factual materials, and not to core attorney work product considered by the expert"); *Haworth v. Herman Miller, Inc.,* 162

F.R.D. 289 (W.D.Mich.1995) (discovery of expert witness opinions and bases does not include discovery of mental impressions and opinions of counsel who retained expert, which were communicated to the expert); *All West Pet Supply Co. v. Hill's Pet Prod. Div.*, 152 F.R.D. 634 (D.Kan.1993) (same, citing to cases interpreting the pre–1993 version of Rule 26 which hold that attorney work product communicated to a retained expert is not discoverable); and Gregory P. Joseph, *Emerging Expert Issues Under the 1993 Disclosure Amendments to the Federal Rules of Civil Procedure*, 164 F.R.D. 97, 103–04 (1996) (arguing that attorney–expert mental impression communications do not constitute "data or other information" within the meaning of Federal Rule 26(a)(2)(B)).

■ The issue presented in this discovery dispute unavoidably requires me to choose which of the above positions should be taken with regard to the disclosure of attorney work product which is submitted to an expert retained to testify at trial. For the reasons which I will next explain, I find the *Karn* opinion and its progeny persuasive, and hold that when an attorney communicates otherwise protected work product to an expert witness retained for the purposes of providing opinion testimony at trial—whether factual in nature or containing the attorney's opinions or impressions—that information is discoverable if it is considered by the expert. This result must obtain either because the providing of work product to the retained, testifying expert constitutes one of the "very rare and extraordinary circumstances," [4] when opinion work product is not absolute, and there is a concomitant substantial need for the opposing party to have this information; or, alternatively, because the disclosure of the work product to the expert constitutes a waiver of the privilege as to that information. In reaching this decision, I am keenly aware that the Fourth Circuit has adopted one of the most protective positions of any circuit with respect to the discoverability of opinion work product. *See* 1 Scott N. Stone & Robert K. Taylor, *Testimonial Privileges* § 2.09, at 2–55 (1995) (noting that the leading case arguably holding that there is an abso-

lute immunity for opinion work product is *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730 (4th Cir.1974)). *See also Sandberg v. Virginia Bankshares, Inc.*, 979 F.2d 332, 355 (4th Cir.1992) ("Opinion work product prepared in anticipation of litigation is absolutely immune from discovery."). Nevertheless, because of the influential role which expert witnesses play in trials, and the importance of promoting effective cross-examination of expert witnesses, I am persuaded that disclosure is required in such circumstances. I further find that requiring such disclosure does not undermine the very important policies which underlie the work product doctrine.

The role played by expert witnesses in modern litigation is truly unique. As a threshold matter, experts are not even permitted to testify unless they possess some scientific, technical or other specialized knowledge which will help the finder of fact understand the evidence in a case or determine a fact in issue. Fed.R.Evid. 702. Accordingly, by definition, an expert's testimony takes · on added significance because it usually focuses on subjects about which the fact finder has little or no knowledge. Additionally, unlike other witnesses, experts are able to base their opinions on facts not admissible in evidence, if of a nature reasonably relied by others in their field, as well as offer opinion testimony as to ultimate issues in the case. Fed.R.Evid. 703, 704. Further, when offering an expert's testimony on direct examination, the proponent is not required to have the expert first testify as to the underlying facts or data which supports the opinions offered, unless the court orders that this be done. Fed.R.Evid. 705. Instead, cross-examination is depended upon to expose any weaknesses in the opinion and its supporting bases.

As the Supreme Court has noted, "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595, 113 S.Ct. 2786, 2798, 125 L.Ed.2d 469 (1993). For this reason, the trial judge depends upon the

4. *Better Gov't Bureau,* 106 F.3d at 606.

efficacy of cross-examination by the party opposing the expert's testimony to point out any weaknesses which might affect its admissibility, as does the jury in determining how much weight to give to the expert's testimony. Indeed, the trial court cannot perform the gatekeeping function contemplated by *Daubert* in determining, pursuant to Fed. R.Evid. 104(a), whether or not to admit expert testimony regarding scientific evidence, without depending on the ability of the opposing party to expose any weaknesses in the offered expert testimony through cross-examination.

Moreover, as Fed.R.Evid. 611(b) instructs, cross–examination of an expert may focus not only on the subject matter of the expert's direct examination, but also on any matters affecting the credibility of that witness, and any of the factors which traditionally affect the credibility of a witness are accordingly fair game on cross–examination.[5] Indeed, the very purpose of the comprehensive disclosures required from retained experts by Fed.R.Civ.P. 26(a)(2)(B) is to afford opposing counsel sufficient information to prepare for cross–examination. *See* Commentary to Fed. R.Civ.P. 26, 146 F.R.D. 401, 633 (1993) ("This paragraph [26(a)(2)(B) ] imposes an additional duty to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross-examination. . . ."). Thus, during pretrial discovery, it is essential that parties be able to discover not only what an opposing expert's opinions are, but also the manner in which they were arrived at, what was considered in doing so, and whether this was done as a result of an objective consideration of the facts, or directed by an attorney advocating a particular position.

It cannot seriously be denied that the fact that an attorney has interjected him or herself into the process by which a testifying expert forms the opinions to be testified to at trial affects the weight which the expert's testimony deserves. As one court has aptly noted:

[S]everal policy reasons support the discoverability of opinion work product in the expert witness context. Requiring disclosure in this situation will promote effective cross-examination of expert witnesses. "Without pre-trial access to attorney-expert communications, opposing counsel may not be able to effectively reveal the influence that counsel has achieved over the expert's testimony." An attorney, consciously or unconsciously, may have shared certain legal theories or conclusions about a case which may have shaped an expert's opinion. Given the significance which jurors may attach to expert testimony and the increasing occurrence of "battle of the experts," a jury is entitled to know everything that influenced an expert's opinion in order to assess his credibility.

*Barna v. United States*, No. 95 C 6552, 1997 WL 417847, at * 2 (N.D.Ill. July 28, 1997) (citations omitted). *Accord Karn v. Rand,* 168 F.R.D. 633, 639 (N.D.Ind.1996) ("[T]he impact of expert witnesses on modern–day litigation cannot be overstated; yet, to some, . they are nothing more than willing musical instruments upon which manipulative counsel can play whatever tune desired. This thought leads to the belief that expert testimony has often been subject to improper influences, and that counsel can all too easily color the expert's opinion by simply controlling the expert's access to information. To compound the problem and the risk for abuse, 'expert witnesses testify regarding subjects outside the common knowledge of the finder of fact, so the jury cannot rely on the experience and common sense of its members to ferret out distorted evidence.' Thus, full, effective cross–examination is critical to the integrity of the truth–finding process.") (citations omitted).

The correspondence from counsel to the Levys which is the subject of this discovery dispute illustrates this point. The documents in question show that as early as August 1995, before the present action was even filed, plaintiff's counsel was corresponding with her mental health experts in an effort to

---

**5.** Such as bias, motive, interest in the outcome of the litigation, prior inconsistent statement (Fed. R.Evid. 613), poor character for truthfulness (Fed.R.Evid. 608), prior conviction (Fed.R.Evid. 609), or weakness in ability to perceive, remember or relate.

develop opinion testimony to support her workers' compensation claim. Thereafter, subsequent to the present case being filed, he provided detailed instructions to the experts about how to present their opinions and supporting bases, in order to comply with the disclosure requirements of Rule 26(a)(2)(B)— going so far as to outline the specific facts to be included in the opinions and apparently drafting the disclosure statement for the experts.

Although it is not improper for an attorney to assist a retained expert in developing opinion testimony for trial—as the commentary to Rule 26 suggests—opposing counsel must be free during discovery to determine the nature and extent of this collaboration, in order to ascertain whether the opinion which is to be offered at trial is that of the expert, as opposed to the attorney. To hold otherwise would be an invitation for abuse, allowing the attorney to effectively construct the retained expert's opinion testimony to support the attorney's theory of the case, while blocking opposing counsel from learning of, or exposing, this influence. If permitted, this practice would seriously undermine the integrity of the truth finding process at trial.

In addition, allowing the discovery of opinion work product which is considered by a testifying expert in forming his or her opinions does not endanger the important policies which underlie the work product privilege. As noted by the Fourth Circuit, courts protect opinion work product from discovery so that parties do not prosecute cases " 'on wits borrowed from the adversary,' " and lawyers do not "lose incentive to do research, relying instead on the opposing party's effort...." *Better Gov't Bureau, Inc.,* 106 F.3d at 607 (citations omitted). When, however, an attorney communicates opinion work product to an expert witness specifically intended to testify at trial for the purpose of shaping the testimony which will be offered, he or she unavoidably foresees the likelihood that those opinions will be communicated to the fact finder, through the expert. If the work product privilege is intended to foster "privacy in development of legal theories, opinions and strategies for the client," *National Union Fire Ins. Co. v. Murray Sheet Metal Co.,*

967 F.2d 980, 983 (4th Cir.1992), this interest is hardly served when the attorney discloses them to a retained expert in order to shape opinion testimony to be offered at trial. Moreover, if the goal is to protect the integrity of the adversary system, this is not served by depriving an opposing attorney of the means to expose the weaknesses in the opinion testimony of an adverse party's expert witness. *See United States v. Pollard (In re Martin Marietta Corp.),* 856 F.2d 619, 624– 26 (4th Cir.1988) (Where a party seeks to make affirmative testimonial use of work product and a court orders its disclosure to an opponent, "[t]here is relatively little danger that a litigant will attempt to use a pure mental impression or legal theory as a sword and shield in the trial of a case so as to distort the fact finding process.") Indeed, as one court has observed:

> [P]roviding work product to an expert witness does not further [the core precepts of the work product doctrine] ... in that it generally does not result in counsel developing new legal theories or in enhancing the conducting of a factual investigation. Rather, the work product either informs the expert as to what counsel believes are relevant facts, or seeks to influence him to render a favorable opinion. Thus, requiring disclosure of an attorney's communications to the expert does not impinge on the goals served by the opinion work product doctrine.... Finally, the "bright-line view" [which permits discovery of opinion work product communicated to an expert witness] actually preserves opinion work product protection in that there is no lingering uncertainty as to what documents will be disclosed. Counsel can easily protect genuine work product by simply not divulging it to the expert.

*Karn,* 168 F.R.D. at 640–41 (N.D.Ind.1996) (citations omitted). For these reasons, I therefore do not believe that the limited circumstances under which this opinion permits disclosure of opinion work product is inconsistent with the strong protection afforded by the Fourth Circuit opinions discussed above, which did not consider the privilege in the context of communications to expert witnesses.

■ In short, when an attorney furnishes work product—either factual or containing the attorney's impressions—to an expert witness retained for the purpose of providing opinion testimony at trial,[6] an opposing party is entitled to discover such a communication, provided it is considered by the expert. In this regard, the communication is discoverable even if the expert did not rely upon it in forming his or her opinions, so long as the expert considered it while developing them. *See Karn*, 168 F.R.D. at 634 (holding that because testifying experts reviewed documents when forming their opinions, the documents were "considered" and required to be disclosed even if the experts did not rely upon these materials in forming their opinions). *Accord* Commentary to Fed.R.Civ.P. 26(a)(2)(B), 146 F.R.D. 401, 634 (1993) ("[L]itigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions—*whether or not ultimately relied upon by the expert*—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed."). If a dispute arises over whether the materials were furnished to an expert to be used in forming his or her opinions or whether the expert considered the work product communication in forming his or her opinion, then, upon the filing of a proper motion to compel, or for a protective order, the court will determine whether the threshold requirements for discovery have been met. Of course, it is the burden of the party asserting work product immunity to demonstrate that the materials were not furnished to their expert to be used in forming an opinion, or that the expert did not consider the materials in forming the opinion. *Cf. Sandberg*, 979 F.2d at 355 (burden of proving applicability of work product doctrine rests with proponent).

■ Applying the foregoing standard to the documents at issue in this case, I find that the first five documents, described above, are discoverable. Plaintiffs have offered no evidence, or argument, to indicate that these materials were not furnished to the Levys for the purposes of forming an

opinion as to Ms. Musselman's alleged injuries and condition, or that the Levys did not consider or review these materials in forming their opinions. The sixth and seventh documents, however, merely contain administrative or procedural information. These communications neither relate to any opinion testimony the Levys will offer at trial nor were provided to the Levys for use in forming their opinions. Accordingly, I will not require their production. The plaintiff is to produce documents one through five within 10 days of the date of this Memorandum and Order.

**SO ORDERED.**

---

**6.** Thus, the holding I reach in this case does not apply to a "consulting expert" who, pursuant to

Fed.R.Civ.P. 26(b)(4)(B), is retained to provide services which do not include testimony at trial.