**STATE ex rel. CROWN POWER AND EQUIPMENT COMPANY, L.L.C., Relator,**

v.

**The Honorable Gary E. RAVENS, Respondent.**

No. SC 89671.

Supreme Court of Missouri, En Banc.

Nov. 17, 2009.

Larry J. Tyrl, Tyrl & Bogdan, Overland Park, KS, for relator.

Richard E. McLeod, Jeff Heinrichs, McLeod & Heinrichs, Kansas City, MO, for respondent.

ZEL M. FISCHER, Judge.

The issue in this writ proceeding is whether an expert witness who was informally produced for his deposition because he was going to testify at a pretrial hearing on venue but was not designated to testify as an expert witness at trial may be compelled to disclose material provided to him unrelated to the venue issue.

## Background

Crown Power & Equipment Company seeks a writ of prohibition preventing the trial court from compelling its expert witness' testimony and production of his entire file.

Norfolk Southern Railway Company alleges that Crown Power was negligent in causing or contributing to cause a March 24, 2006, railroad grade crossing accident in Keytesville, Missouri. The case proceeded to jury trial in the Chariton County circuit court. Norfolk Railway moved for a mistrial before completing its voir dire on the grounds that, based on answers given by some potential jurors, the railroad could not receive a fair trial. Judge Gary Ravens granted Norfolk Railway's motion.

Norfolk Railway then moved for change of venue, claiming that Chariton County inhabitants were prejudiced against Norfolk Railway and that Crown Power had undue influence over them. Norfolk Railway retained jury consultant Lisa Dahl to testify as an expert at a hearing on the venue motion. Crown Power informally advised Norfolk Railway that it had retained Thomas Beisecker, Ph.D., as an expert for the purpose of analyzing and critiquing Dahl's venue study. Unknown to Norfolk Railway, prior to Dr. Beisecker's deposition, Crown Power had retained Dr. Beisecker in the same case as a non-testifying consultant to conduct focus groups and assist in trial strategies, including jury selection.

During Dr. Beisecker's video deposition, Norfolk Railway began to question him about work he had done for Crown Power unrelated to the venue study. Crown Power objected to the questions on the ground that Dr. Beisecker's work unrelated to venue was protected from disclosure as attorney work product and instructed Dr. Beisecker not to testify or produce documents unrelated to venue matters. Dr. Beisecker complied, and the parties agreed that Norfolk Railway would formally raise the issue with Judge Ravens.

After the deposition, Norfolk Railway caused a *subpoena duces tecum* to be served on Dr. Beisecker in Kansas. In response, Crown Power filed a motion to quash the subpoena. The parties agreed to table Crown Power's motion to quash the subpoena pending in Kansas until Judge Ravens made his rulings. Judge Ravens was presented with Norfolk Railway's motion to compel production of Dr. Beisecker's file unrelated to the venue issue and his continued deposition on topics unrelated to venue and Crown Power's competing motion for protective order based on work product privilege. Prior to Judge Ravens ruling on these competing motions, Crown Power withdrew its objection to Norfolk Railway's request for a change of venue and agreed to a change of venue from Chariton County to Sullivan

County. Norfolk Railway had requested venue be changed to Sullivan or Platte County. No evidence was offered by either party; Judge Ravens sustained the motion for change of venue and ordered the case sent to Sullivan County.

At the conclusion of the hearing on venue, Norfolk Railway indicated it wanted to pursue its motion to compel despite the venue change. Judge Ravens granted the motion to compel the deposition and production of Dr. Beisecker's file and overruled Crown Power's motion for protective order.

Crown Power filed its petition for a writ of prohibition in this Court. This Court entered a preliminary writ of prohibition, which it now makes absolute.

## Standard of Review

■ This Court has the authority to "issue and determine original remedial writs." Mo. Const. art. V, sec. 4.1. Filing a petition for a writ of prohibition is an appropriate procedure when a party has been directed to produce material that is privileged. This is because the damage to the party against whom discovery is sought is irreparable, because if the privileged material is produced, the damage cannot be repaired on appeal. *State ex rel. Boone Retirement Ctr., Inc. v. Hamilton*, 946 S.W.2d 740, 741 (Mo. banc 1997).

## Analysis

■ Crown Power claims that Norfolk Railway's motion to compel is moot because Crown Power conceded to the change of venue to Sullivan County and withdrew Dr. Beisecker as a witness for any purpose. The matter is not moot because the order to compel is outstanding and because the venue decision theoretically may still be the subject of an appeal. This Court declines to quash the preliminary writ of prohibition on mootness grounds.

In *State ex rel. Tracy v. Dandurand*, this Court, interpreting Rule 56.01(b)(3), stated: "The discovery of facts known and opinions held by an expert are, until the expert is designated for trial, the work product of the attorney retaining the expert." 30 S.W.3d 831, 834 (Mo. banc 2000). Rule 56.01(b)(3) protects attorney work product by requiring a showing that the party seeking discovery is "unable without undue hardship to obtain the substantial equivalent of the materials by other means."

Norfolk Railway argues that this Court's decision in *Tracy* requires an attorney to disclose all documents given to an expert who testifies at a pretrial hearing even if the expert is not designated to testify at trial. *Tracy* is not so broad.

In *Tracy*, the plaintiff sued her insurance company for bad faith for allegedly exposing her to liability in excess of her policy coverage when defending her in a bodily injury claim. *Tracy* at 832. While preparing for trial, the insurer inadvertently sent confidential documents to its expert witness, who was designated to testify at trial. *Id.* at 833. Pursuant to a notice *duces tecum*, the expert produced his file for the plaintiff when he was deposed, but he was not questioned about the file at this deposition. *Id.* The plaintiff's counsel took the deposition of the insurer's attorney and questioned him about the confidential documents; the attorney refused to answer citing attorney-client privilege. *Id.* At a subsequent video deposition of insurer's expert, the plaintiff cross-examined him about the documents. *Id.* Thus, the expert in *Tracy* was provided with materials, he in turn provided opposing counsel with the materials at his deposition, and he was designated to testify at trial. *Id.* at 836.

This Court in *Tracy* concluded, "The bell has been rung and cannot be unrung." *Id.* But, in this case, the bell has not been rung. The facts of this case are distinguishable from *Tracy* in three major respects. First, Dr. Beisecker never provided the non-venue-related materials to Norfolk Railway. Second, Dr. Beisecker never was designated to testify at trial. Third, venue was changed to a county that was suggested as suitable by both parties without evidence or testimony offered by either party.

■ Dr. Beisecker was not designated as a testifying witness for trial; therefore, he cannot be compelled to disclose all materials provided to him by Crown Power. In *Tracy*, this Court stated the bright-line rule that "[a]ll materials given to a testifying expert must, if requested, be disclosed." *Id.* In this case, Dr. Beisecker was not a "testifying expert" as defined by Rule 56.01(b)(4) because Crown Power never designated him as an expert to testify at trial. Dr. Beisecker's limited role was to offer opinions at the hearing on Norfolk Railway's motion for change of venue, which never occurred. Accordingly, the bright-line rule from *Tracy* that experts designated to testify at trial pursuant to Rule 56.01(b)(4) must produce all material given to them is not applicable to the facts of this case.[1] Therefore, the holding of *State ex rel. Tracy v. Dandurand*, 30 S.W.3d 831 (Mo. banc 2000), that experts designated to testify at trial must

produce all materials given to them if requested, is not modified.

Rule 56.01(b)(4)(a) states: "A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness *at trial* by providing such expert's name, address, occupation, place of employment and qualifications to give an opinion ..." (emphasis added). By its plain language, Rule 56.01(b)(4)(a) presupposes that a testifying expert is one who will testify at trial, not a consultant who may provide some testimony at a pretrial hearing that does not deal with the merits of the case. In this case, Dr. Beisecker was informally disclosed to opposing counsel as a witness to be called at the venue hearing. In *Tracy*, this Court made clear that when an expert is mistakenly given privileged documents, the attorney may withdraw the expert's designation as a testifying expert prior to the deposition; then, "[t]he attorney can claim work product protection as to that retained expert, since the expert will not be called for trial." *Tracy* at 835–36. Here, Crown Power never intended its jury consultant, Dr. Beisecker, be called at trial and has conceded that Dr. Beisecker will never be called at trial. Accordingly, Crown Power may claim work product protection of Dr. Beisecker's non-venue related materials.[2]

Rules 56.01(b)(4) and (5) provide the rules of discovery for both retained and

---

1. The dissenting opinion alleges the Court is "abandon[ing] settled Missouri law and the theory behind it in favor of an unworkable rule." Yet, the entire dissenting opinion cites only one Missouri case decision, *State ex rel. Tracy v. Dandurand*, 30 S.W.3d 831 (Mo. banc 2000), which is thoroughly discussed. The dissenting opinion supports its logic by citing eight federal cases that, of course, have different expert witness rules. As for the claim of "unworkability," it is not unworkable for the word "trial" in the rules to mean "trial"

because lawyers and judges know what that means.

2. The dissent's suggestion at pages 5–6 that the Court is "trying to help Crown out of its predicament" is incorrect. The Court merely decides this case, the facts of which will likely never reoccur, by application of its rules as written. The well-reasoned opinion in *Tracy* dealing with Rule 56.01(b)(3), "Trial Preparation Materials," remains fully intact.

non-retained experts who are expected to testify at trial. These rules do not provide for the discovery of experts who are merely used as consultants or who may provide testimony at a non-merits pretrial hearing. With the proliferation of the use of expert testimony for a myriad of purposes, it may be wise to consider changes to existing rules, but such changes should be made through the appropriate process—not a court decision. It is important for attorneys and parties to be able to rely on this Court to follow the rules as written.

■ Norfolk Railway argues that the language of § 490.065.3 [3] requires disclosure of facts or data when the expert is designated to testify at any hearing. "The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the *hearing* ...." Section 490.065.3 (emphasis added). However, § 490.065 deals with *admissibility* of expert testimony in civil actions; whereas, the issue in this case is *discovery* of privileged work product information held by an expert who is not designated to testify at trial. *Tracy* confirms that different standards apply regarding what is discoverable and what is admissible at trial. But, Rule 56.01 makes it clear the information sought in discovery must be reasonably calculated to lead to the discovery of

admissible evidence. The only claimed need for further discovery of information given to Dr. Beisecker is to be prepared to cross-examine him, but he never testified, and he is not going to testify at trial. [4]

## Conclusion

The writ of prohibition is made absolute.

TEITELMAN, RUSSELL, and STITH, JJ., concur.

WOLFF, J., concurs in separate opinion filed.

TEITELMAN, concurs in opinion of WOLFF, J.

PRICE, C.J., dissents in separate opinion filed.

BRECKENRIDGE, J., concurs in opinion of PRICE, C.J.

MICHAEL A. WOLFF, J., concurring.

The present case—and three decades of observing and participating in expert witness discovery—prompts this question: Has the legal profession lost its mind?

The legal profession, the courts and the paying public are suffering the consequences of this Court's 1974 promulgation of Rule 56.01(b)(4) authorizing expert witness discovery. [1] Discovery—and discovery disputes about what is in the heads of

---

**3.** References to statutes are to RSMo 2000, unless otherwise indicated.

**4.** The rule in *Tracy*, which requires the disclosure of all materials provided to an expert witness who was to testify at trial, preserves the integrity of the adversary system, because it enables effective cross-examination. In this case, it is undisputed that Dr. Beisecker is not going to be testifying at trial, so there is no cross-examination expected. Further, the information sought to be discovered concerns focus groups for jury selections, which no one suggests will be admissible at trial. The dissent desires to compel discovery that is not

reasonably calculated to lead to the discovery of admissible evidence. Rule 56.01(b).

**1.** Rule 56.01(b)(4) was amended in 1993 to specify what information must be disclosed about the expert. The current version provides:

Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of Rule 56.01(b)(1) and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

(a) A party may through interrogatories require any other party to identify each

retained experts—have driven the costs and misery of litigation to insufferable levels while providing little, if any, benefit in the preparation and trial of cases.

The principal opinion says it may be wise to consider changes to existing rules governing expert witness discovery. The dissenting opinion says the majority's opinion announces an 'unworkable' rule. I agree with both sentiments, but I believe we should rethink the expert witness rule entirely.

The controversy over expert discovery in this case is a perfect illustration of how imperfect our system is. This lawsuit resulted from an earlier lawsuit in which Norfolk Southern Railway was found liable for damages arising from a March 2006 railroad crossing collision in Chariton County. After that judgment, Norfolk Southern sued Crown Power and Equipment in the present case, claiming that Crown Power was negligent in causing or contributing to cause the March 2006 railroad crossing accident. When the present case came to trial, Norfolk Southern, after its questioning of prospective jurors, moved for a change of venue on the ground that Chariton County jurors were biased against the railway. The trial court set a hearing on the venue motion; Crown Power designated Thomas Beisecker, Ph. D., whom Crown Power previously had

consulted about jury selection matters, as an expert who would testify at the hearing.

This discovery dispute arises from Crown Power's refusal to produce documents related to Dr. Beisecker's jury selection consultation and its objection to deposition testimony regarding Dr. Beisecker's earlier work. The trial court overruled Crown Power's motion to bar production of the documents and to protect the expert from further deposition testimony about his earlier work. I hasten to point out that nothing in this expert's head, or the documents the expert used or prepared, has anything to do with the merits of the lawsuit between Norfolk Southern and Crown Power.[2]

In this case, two very talented and able lawyers and their assistants have spent many hours bringing this dispute before the trial court judge, a few court of appeals judges and the seven judges of this Court. If the attorney for Norfolk Southern were to get everything he seeks, what does he get? He gets the documents the expert examined or prepared when consulted by his adversary about focus groups of persons who bear demographic similarities to those who might have served as jurors in the county where the trial originally was to be held. He also may get the opportunity to question Dr. Beisecker exhaustively in a deposition about whatever

person whom the other party expects to call as an expert witness at trial by providing such expert's name, address, occupation, place of employment and qualifications to give an opinion, or if such information is available on the expert's curriculum vitae, such curriculum vitae may be attached to the interrogatory answers as a full response to such interrogatory, and to state the general nature of the subject matter on which the expert is expected to testify, and the expert's hourly deposition fee.
(b) A party may discover by deposition the facts and opinions to which the expert is expected to testify. Unless manifest

injustice would result, the court shall require that the party seeking discovery from an expert pay the expert a reasonable hourly fee for the time such expert is deposed.

2. Crown Power in September 2008 withdrew its opposition to Norfolk's motion for change of venue and acceded to Norfolk's request to change venue from Chariton County to Sullivan County, the county that Norfolk's expert witness recommended. Crown Power urges that this renders Norfolk's venue motion moot, but the discovery dispute goes on and on until euthanized by this Court's writ.

he might have learned or opined about this case.

I do not criticize the conduct of either attorney in this case. The attorney seeking the discovery here is following the professional norm in this state of trying mightily to find out everything an opposing party's retained expert knows that is even remotely about the lawsuit, and the attorney resisting the discovery is doing his best to protect his sacred work product. The fact that our legal system encourages (or perhaps requires) these very talented professionals to spend their time engaged in this nonsense may be a sign of our civilization's decline. But I digress.[3]

## The Vanishing Trial

Actually getting to the merits of a controversy and having a trial is becoming an increasingly remote possibility as modern trials evolve, in part because of the discovery provisions at issue here. The mind games that attorneys and expert witnesses play with one another may be amusing at times, but they are costly. In the federal court system, whose discovery this Court unfortunately emulates,[4] only about 1.8 percent of cases survive to be tried.[5] What aptly has been called "the vanishing trial" is caused in large part by the misery and expense of civil discovery.[6]

Depositions of retained experts are the biggest waste of time and money in the system. They result in immodest fees to experts; a steady source of income for court reporters; and, for attorneys billing by the hour, a cushion of comfort our forebears in the legal profession hardly

3. Justice Antonin Scalia recently made a similar observation. *See* Debra Cassens Weiss, *Scalia Worries Gifted Litigators Should Be Doing Something More Productive*, ABA JOURNAL, Oct. 1, 2009, *available at* http://www. abajournal.com/weekly/scalia_worries_high_court_litigators_should_be_doing_something_more_product (accessed Nov. 13, 2009).

4. Federal Rule 26 of Civil Procedure was amended in 1970 to include section (b)(4) governing expert discovery. Missouri followed suit shortly thereafter, and Rule 56.01 became effective January 1, 1975. Rule 56.01(b)(4) was the first Missouri rule specifically discussing experts. Joseph J. Simeone and John P. Walsh, *The New Missouri Rules on Civil Discovery*, J. Mo. B. 463, 465 (Nov.-Dec. 1974).

5. Marc Galanter, *The Vanishing Trial: An Examination of Trials and Related Matters in Federal and State Courts*, 1 J. EMPIRICAL LEGAL STUD. 459, 462–63 (2004), cited in Roger L. Goldman, *Why Law Students Should Take the Federal Courts Course*, 53 ST. LOUIS U.L.J. 745, 759 (Spring 2009).

Federal Rule 26(b)(4) is more elaborate than Missouri's rule for expert witness discovery, Rule 56.01(b)(4). This difference reflects the managerial role the federal rules have created for federal trial judges. This is another illustration of the general proposition that just because something is in the Federal Rules of Civil Procedure does not necessarily mean it is good.

6. *See* Galanter at 517 ("[G]oing to trial has become more costly as litigation has become more technical, complex, and expensive. Rising costs of increasingly specialized lawyers, the need to deploy expensive experts, jury consultants, and all associated expenses have priced some parties out of the market."). *See also Final Report*, 2009 AMERICAN COLLEGE OF TRIAL LAWYERS AND THE INSTITUTE FOR THE ADVANCEMENT OF THE AMERICAN LEGAL SYSTEM (UNIVERSITY OF DENVER) 3 (revised April 15, 2009), *available at* http://www.du.edu/legalinstitute/ publications.html (accessed Nov. 13, 2009) (*"Trials, especially jury trials, are vital to fostering the respect of the public in the civil justice system. Trials do not represent a failure of the system. They are the cornerstone of the civil justice system.* Unfortunately, because of expense and delay, both civil bench trials and civil jury trials are disappearing.") (emphasis in original); James F. Henry, *The Courts at a Crossroads: A Consumer Perspective of the Judicial System*, 95 GEO L.J. 945 (2007); Lawrence M. Friedman, *The Day Before Trials Vanished*, 1 J. EMPIRICAL LEGAL STUD. 689 (2004).

could have imagined.[7]

I cannot recall a single instance in which the discovery deposition of an expert witness revealed anything of real value in a lawsuit. There probably are some instances in which discovery was useful, but the information surely could have been obtained by other, less costly means. Perhaps this observation means I have a bad memory, I have led a sheltered life or I am exaggerating. Even admitting to any of these personal failings, however, does not negate my point that the financial and emotional costs of expert witness discovery far outweigh its usefulness.

Moreover, as most experienced trial attorneys know, many experts welcome depositions—not just for the income they provide but also because they give the experts an opportunity to be educated about the adversary's approach to cross-examination. The adversary, of course, pays for this education.

### Repeal the Discovery Rule?

Is there a jurisdiction that has refused to succumb to the absurdity of all-out expert witness discovery? I am happy to report there is—Oregon, a sanctuary of sanity on a coast of the United States not renowned for sanity. Oregon has *no* rule allowing discovery as to retained experts.[8] When an expert testifies, the adverse parties are given all the materials the expert has reviewed and an opportunity to study them in preparation for cross-examination. Imagine that.

No need actually to imagine; consider this from one observer who journeyed to Oregon:

> In recent years, my consulting on corporate and securities law matters has carried me into law firm offices and courts in New York, Illinois, Alabama, Idaho, Alaska, Washington, Oregon and Hawaii. The highest level of professionalism and the greatest amount of civility I see among lawyers is in Oregon. And, guess what? Of all those jurisdictions, Oregon is [the] only one that has not adopted the Federal Rules of Civil Procedure.

> ... Oregon rules of civil procedure permit fewer opportunities to engage in "litigation within litigation." I certainly know that to be true with respect to discovery.

7. Colorado has tried to reduce the harsh effects of modern day discovery in adopting a "simplified procedure" that applies to civil cases involving claims of less than $100,000. C.R.C.P. 16.1. In addressing depositions, simplified procedure permits depositions only to preserve testimony for use at trial or to obtain and authenticate documents. Any witness who has been deposed may not be offered as a witness to present live testimony at trial by the party taking the depositions, and any party may offer admissible portions of the witness' depositions, without a showing of unavailability. C.R.C.P. 16.1(k)(4) (C.R.C.P. 26 also requires that experts be disclosed, including the name of the expert and a written report that includes all opinions to be expressed by the expert and the basis and reasons therefore, among other things).

Simplified procedure was piloted in six counties between July 2004 and May 2005. The average cost of a case was $1,230 under the simplified procedure compared with an average total cost of $2,212 for a case using traditional procedures. *Civil Justice Reform Summit*, 2007 Institute for the Advancement of the American Legal system (University of Denver) 13–14. The Institute's report is available on its Web site at http://www.du.edu/legalinstitute/publications2007.html (accessed Nov. 13, 2009).

8. *Civil Justice Reform Summit* at 11 (*quoting Stevens v. Czerniak*, 336 Or. 392, 84 P.3d 140, 147 (2004)). Although Oregon rules do not provide for expert witness discovery, they also do not prohibit the parties from agreeing to exchange information or do whatever the parties agree is needed to prepare a case.

Opposing counsel does not know who the opposing side's expert is until the expert begins testimony. Upon completion of direct examination, opposing counsel receives the materials the expert reviewed with a long recess or lunch break to prepare cross examination. In many ways, it is a more efficient system. The cross examination is just as sharp and thorough as in other jurisdictions. A side effect is much more civility among members of the bar. The animosities that build up through protracted discovery, with motions to compel, argument over scheduling depositions, motions for sanctions, trials within trials, and the like seem less extreme, or nonexistent, in Oregon.[9]

Perhaps this Court will ask one or more committees to study problems with expert witness discovery. I welcome this; there certainly is room for improvement. One overarching question should be asked: Will a committee studying expert witness discovery simply recommend rearranging the deck chairs on this Titanic? Or will a committee recommend that the Court sink the damned [10] ship and start over?

I respect the fact that our Missouri imaginations may not be sufficient to embrace the complete abolition of expert witness discovery in civil cases as Oregon has accomplished by its stubborn refusal to join the 'modern' world of federal' expert discovery. There is a problem with simply tinkering with the details of a flawed system, however: One definition of 'insanity'—a word I use to describe the current system—is doing the same thing over again and expecting different results.

If we cannot get our minds around a complete repeal of the expert witness discovery rule, let me propose instead a less drastic means of curtailing the blight of expert discovery. My proposed rule (1) would require a party who proposes to use a retained expert's testimony at trial or other hearing to disclose in advance [11] the name of the expert, the expert's *curriculum vitae*, a list of materials the expert has reviewed, a summary of each of the expert's opinions,[12] and the expert's fees; and (2) would allow parties by agreement—and *only* by agreement of all parties whose interests would be affected by expert testimony—to engage in any other

---

**9.** *Civil Justice Reform Summit* at 11–12 (*quoting* Douglas M. Branson, *No Contest: Corporate Lawyers and the Perversion of Justice in America*, 48 Case W. Res. L.Rev. 459, 472–73 (1998)).

**10.** I used the word "damned" not as an epithet but rather in its Webster's Dictionary sense of "doomed," albeit not necessarily to eternal punishment . . . although some expert witness depositions do seem likely to last for an eternity.

**11.** The time would be a specified number of days (30, 60, 90, whatever) before the date set for a trial or hearing, with a provision for the trial court to shorten or expand the time, if a party shows cause for a shorter or longer time, or for the parties to agree to the time other than that specified in the rule. The

proposed rule perhaps also should require the party providing the information to update the disclosure if there is any change in the expert's opinion or its bases and would require a time limit for any such changes. The expert's testimony would be limited strictly to those opinions set forth in the pre-trial disclosure.

**12.** This is a modification of Missouri's current Rule 56.01(b)(4). My proposed rule would require a list of the materials the expert has reviewed (which would be discoverable) and a summary of each of the expert's opinions, rather than the current rule's provision for merely "the general nature of the subject matter on which the expert is expected to testify." The current rule contemplates further discovery by deposition; my proposed rule emphatically does not, unless the parties agree.

discovery as to experts.[13]

This modest compromise between our current insanity and the Oregon model would allow the expert's opinions to be used in summary judgment proceedings.[14] It also would allow attorneys to know the identity of retained experts so they could use the Internet and other available sources to examine the expert's publications and activities that might bear fruit for cross-examination. Eliminating depositions will avoid parties essentially paying for their lawyers to educate their adversaries' experts. It would promote civility among lawyers, a feature observed in the Oregon system. Most importantly, it

would diminish greatly, if not eliminate, the needless waste of time and money involved in controversies such as the present one.[15]

Tinkering with the details of the current rule will not help much, if at all. Abolishing the rule would be a great improvement, returning us to the pre–1974 era when lawyers had to use their wits and their ability to cooperate with their adversaries.

Some civil litigation has become more complex since 1974 when this Court adopted the rule permitting discovery of experts. If the complexity of modern litigation produces some felt need to have

13. This is somewhat similar to the recommendations as to expert witnesses set forth in *Final Report*, 2009 AMERICAN COLLEGE OF TRIAL LAWYERS AND THE INSTITUTE FOR THE ADVANCEMENT OF THE AMERICAN LEGAL SYSTEM, at 17 which states:

Experts should be required to furnish a written report setting forth their opinions, and the reasons for them, and their trial testimony should be strictly limited to the contents of their report. Except in extraordinary cases, only one expert witness per party should be permitted for any given issue.

The federal rules and many state rules require written expert reports and we urge that the requirement should be followed by all courts. The requirement of an expert report from an expert should obviate the need for a deposition in most cases. *In fact, some Task Force members believe that it should obviate altogether the need for a deposition of experts.*

(Emphasis added because I agree with these well-informed task force members).

The recommendations in the *Final Report* now have been published as proposed rules. The "Pilot Project Rules" include this proposed rule on discovery of retained experts:

Each expert must furnish a written report setting forth his or her opinions, and the reasons for them, and the expert's direct testimony will be strictly limited to the contents of the report. There must be no additional discovery of expert witnesses except as provided in the initial pretrial order.

The rule also would allow each party only one expert witness for any given issue, except in extraordinary cases. *21st Century Civil Justice System: A Roadmap for Reform: Pilot Project Rules*, 2009 AMERICAN COLLEGE OF TRIAL LAWYERS AND THE INSTITUTE FOR THE ADVANCEMENT OF THE AMERICAN LEGAL SYSTEM (UNIVERSITY OF DENVER) 7.

14. The proposed rule might provide simply that information disclosed as to the expert would be treated as being under oath for the purpose of summary judgment under Rule 74.04.

15. So far as I know, no Missouri court has accepted the invitation to hold a *"Daubert"* hearing such as those in federal trial courts in which the validity of expert testimony is evaluated in hearings that may last for days. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). That, I hope, is because Missouri lawyers and judges realize that § 490.065, RSMo 2000, differs from the expert provisions of the Federal Rules of Evidence and does not make the judge a gatekeeper of the validity of expert testimony. The criterion that the statute provides in civil cases is limited to the question of whether the facts and data on which an expert relies are those reasonably relied on by experts in the relevant field. *See also State Bd. of Registration for the Healing Arts v. McDonagh*, 123 S.W.3d 146, 149 (Mo. banc 2003), and *McDonagh*, 123 S.W.3d at 160 (Wolff, J., concurring).

expert witness discovery, the Court should go no further than the rule proposed in this opinion, or the similar rule recently proposed by the Institute for the Advancement of the American Legal System and the American College of Trial Lawyers.[16] To do otherwise, that is, to perpetuate the current system of expert witness depositions, is to continue a needless source of harm to our profession and the paying public.

## Conclusion

I most heartily agree with the principal opinion that it may be wise to examine the expert witness discovery provisions. As to the outcome of the present controversy, I am indifferent. Either side of this discovery dispute can prevail; the fate of the parties' lawsuit probably will be unaffected. And the fate of the republic likewise is unaffected.

Having said that, I believe that the dissenting opinion adheres more faithfully to the dysfunctional spirit of the present discovery rule. It would give the bench and bar a bright-line rule for discovery as to experts.

But the history and language of the rule tends to favor the result reached in the principal opinion. Before 1974, there was no rule for discovery of retained experts. The problem Rule 56.01(b)(4) appears to have solved is that experts came to trial and testified without the benefit of prior notice and opportunity for discovery. The rule that was adopted in 1974 solved that "problem" by allowing discovery, including

deposition testimony, of an expert whom the other party "expects to call as an expert witness at trial...." The expert in this case was not expected to be called at trial, so he is not covered by the language of the rule. I therefore concur in the principal opinion.

WILLIAM RAY PRICE, JR., Chief Justice, dissenting.

Because the majority abandons settled Missouri law and the theory behind it in favor of an unworkable rule, I dissent.

Missouri law regarding the discovery of experts was clearly set out in *State ex rel. Tracy v. Dandurand,* 30 S.W.3d 831 (Mo. banc 2000). This Court stated in unequivocal language: "All materials given to a testifying expert must, if requested, be disclosed. This is a 'bright line' rule ... It is clear, understandable, and does not require the application of a multi-prong test."[1] The Court provided the reasoning for its holding in the following words: "Rule 56.01(b)(4) should be read to require production of all the materials provided to the expert. To hold otherwise would allow the expert witness or the party retaining the expert to select which documents to produce after the expert has reviewed the documents in preparation for the expert's testimony."[2]

Unlike a lay witness, an expert does not have his own knowledge of the facts of the case.[3] "The documents, materials, and other information provided to him are the sources of the facts he knows."[4] While counsel may not force the other side's

---

**16.** The expert witness rule proposed by the Institute for the Advancement of the American Legal System and the American College of Trial Lawyers is quoted in footnote 13.

**1.** *Tracy v. Dandurand,* 30 S.W.3d at 835.

**2.** *Id.*

**3.** Friedenthal, *Discovery and Use of an Adverse Party's Expert Information,* 14 Stan.L.Rev. 455, 482 (1962).

**4.** *Tracy,* 30 S.W.3d at 834; *Heitmann v. Concrete Pipe Machinery,* 98 F.R.D. 740, 742 (E.D.Mo.1983).

expert to work for him, this Court stated that "it is appropriate ... to cross-examine an expert witness as to information provided to [him or her] that may contradict or weaken the basis for his or her opinion."[5] *Tracy* is unambiguous on this issue.

The majority's interpretation is simply a gloss on the language of Rule 56.01(b)(4)(a) and (b). Rule 56.01(b)(4)(b), which governs depositions, provides that "a party may discover by deposition the facts and opinions to which an expert is expected to testify." The majority attempts to limit this language, which is not limited itself, by reference to Rule 56.01(b)(4)(a). Rule 56.01(b)(4)(a), which governs interrogatories, states that "a party may through interrogatories require any other party to identify each person whom the other party expects to call as a witness at trial...."[6] To reach its conclusion then, the majority grafts the "at trial" language from the paragraph governing interrogatories onto the one governing depositions. In doing so, the majority ignores the introductory language of 56.01(b)(4), which provides that the rule permits discovery of facts known and opinions held by experts that were "acquired or developed **in anticipation of litigation** or for trial."[7] Rule 56.01(b)(4) does not limit the application of

subsections (a) and (b) to experts expected to be called only at trial.

The distinction intended by the rule is between **consulting** and **testifying** expert witnesses—not between pretrial and trial testifying expert witnesses. The reasoning supporting this distinction is simple and clear.

A consulting expert collaborates with counsel on trial strategy; the work product protection serves to incentivize and reward diligent trial preparation and free communication between counsel and his consultant.[8] "A lawyer's decisions about which people to use in confidence for which purposes in preparing a case ... are as central to lawyering strategy as one can get."[9]

Once counsel decides to have his expert present opinions to a fact finder, however, the privilege is waived. When "an attorney communicates opinion work product to an expert witness specifically intended to testify ... he unavoidably foresees the likelihood that those opinions will be communicated to the fact finder, through the expert."[10] Opposing counsel must know what information was provided to the expert to test the experts' opinions. Because expert testimony usually focuses on subjects about which the fact finder knows little, and because the fact finder depends

---

5. *Id.; John Doe v. U.S.*, 350 F.3d 299, 302 (2nd Cir.2003); *Heitmann*, 98 F.R.D. at 742 (holding that even when a report was prepared by a non-testifying expert, it was subject to discovery when it was needed for effective cross-examination of a testifying expert who relied on it in reaching his opinion).

6. The majority opinion is internally inconsistent. Because Beisecker was never designated to testify at trial, not only his supposedly unrelated work but **his entire file** should have been protected from disclosure. Yet the majority specifically sanctions discovery of Beisecker's venue-related work.

7. Rule 56.01(b)(4). Emphasis added.

8. *Durflinger v. Artiles*, 727 F.2d 888, 891 (10th Cir.1984); *Employees Committed for Justice v. Eastman Kodak Company*, 251 F.R.D. 101, 104 (W.D.N.Y.2008) (holding that materials used by experts retained as litigation consultants are privileged and immune from disclosure).

9. *In re Pizza Time Theatre Securities Litigation*, 113 F.R.D. 94, 98 (N.D.Cal.1986) (stating that a non-testifying expert is a "unique repository of insights into counsel's opinion work product").

10. *Musselman v. Phillips*, 176 F.R.D. 194, 199 (D.Md.1997).

on the "efficacy of cross-examination of the expert's testimony to point out any weaknesses," the rule set out in *Tracy* preserves the integrity of the adversary system.[11] It would be "manifestly unfair to allow a party to use the privilege to shield information which it had deliberately chosen to use offensively."[12]

The federal courts have held, as this Court did in *Tracy*, that opposing counsel is permitted the opportunity to "reveal [any] influence that counsel has achieved over the expert's testimony."[13] And the federal courts have adopted a bright-line rule, as this Court did in *Tracy*, to enable effective cross-examination of expert witnesses and dispel any lingering uncertainty over the disclosure of documents divulged to a testifying expert.[14]

What neither this Court nor any other jurisdiction has done is to recognize a "trial" on the merits as a temporal limitation for purposes of expert discovery. The time at which an expert witness testifies has nothing to do with whether he should be subject to cross-examination or the discovery process. The moment Crown decided to avail itself of the benefits of having its consulting expert testify, it waived the privilege over the materials it provided to him.[15]

The majority's attempt to split the baby invites a whole new world of "hide the ball" expert shenanigans. The new rule proposed today is an "invitation for abuse" that allows an attorney to "effectively construct the . . . opinion testimony to support the attorney's theory of the case, while blocking opposing counsel from learning of or exposing this influence."[16] The majority's new interpretation permits only the expert and his counsel to know the entirety of the information provided and relied on and leaves the fox guarding the hen house.

The majority's new interpretation also sets Rule 56.01(b)(4) in contradiction to section 490.065(3), RSMo 2000. The statute allows an expert opinion to be based on "facts or data . . . made known to him at or before the hearing." It recognizes no temporal distinction as to when the expert's testimony is offered during the litigation process. To have a narrower rule for discovery than admissibility at trial simply makes no sense.

The reality of this case is that Crown made a mistake. It used the same expert witness to perform two functions—to provide focus group jury selection work **and** to give testimony regarding venue selection. What would have been protected work product was then waived and subject to discovery. In trying to help Crown out of its predicament, the majority creates an artificial distinction in Rule 56.01(b)(4) that opens the door to manipulation of the discovery process. This Court should leave the consequences of the mistake to the party who made it instead of gutting Missouri law governing expert discovery.

I respectfully dissent.

---

11. *Id.*

12. *CP Kelco U.S. Inc. v. Pharmacia Corp.*, 213 F.R.D. 176, 178–79 (D.Del.2003).

13. *Musselman*, 176 F.R.D. at 198.

14. *Karn v. Rand*, 168 F.R.D. 633, 639–40 (N.D.Ind.1996).

15. *See Employees Committed for Justice*, 251 F.R.D. at 104 (holding that "when an expert alternately dons and doffs the 'privileged hat' of a litigation consultant and the 'non-privilege hat' hat of a testifying witness" the materials he uses to form his opinion testimony are discoverable).

16. *Musselman*, 176 F.R.D. at 199.